In the Matter of STROUD WHOLE-
SALE, INC., Debtor.

Ernest C. RICHARDSON, III, Trustee for
Stroud Wholesale, Inc., Plaintiff,

v.

FIRST FEDERAL SAVINGS AND LOAN
ASSOCIATION OF PITT COUNTY, et
al., Defendants.

Bankruptcy No. 81–00968–4.
Adv. No. 81–0603–AP.

United States Bankruptcy Court,
E.D. North Carolina.

Jan. 27, 1984.

Ernest C. Richardson, III, New Bern, N.C., pro se.

W.H. Watson, Greenville, N.C., for the County of Pitt and Town of Ayden.

Dept. of Justice, Mark D. Friedman and Tracy Whitaker, Washington, D.C., for the U.S. of America.

## MEMORANDUM OPINION AND ORDER

THOMAS M. MOORE, Bankruptcy Judge.

This matter comes on to be heard on the plaintiff's complaint to sell the debtor's real property free and clear of liens under the provisions of 11 U.S.C. § 363. Two of the defendants, i.e. County of Pitt and Town of Ayden, resisted the sale. On December 15, 1981, an Order was entered directing the sale of the real property free and clear of the statutory liens of Pitt County and the Town of Ayden. At the hearing, the Court reserved for determination certain other issues raised by the County of Pitt and Town of Ayden.

The Order entered on December 15, 1981, provided that all liens and encumbrances shall attach to the proceeds of sale. The Order further provided for the trustee to pay the cost of administration and distribute the remaining funds according to the Bankruptcy Code. The Order dated December 15, 1981, directing the sale of the property was not appealed.

The real property of the debtor has been sold by the trustee and funds are available for distribution.

The County of Pitt and Town of Ayden contend that 11 U.S.C. § 363(f) which permits sale of property free of liens, 11 U.S.C. § 523(a)(1)(A) which discharges certain tax claims and 11 U.S.C. § 724(b) which provides for subordination of statutory tax liens are unconstitutional. They also request this Court to determine the effect of these statutes on their claims and their right to payment.

The United States of America has intervened in this case to defend the constitutionality of the challenged provisions of the Bankruptcy Code.

The plaintiff-trustee is an attorney at law in New Bern, North Carolina, and is appearing on his own behalf. The County of Pitt and Town of Ayden are represented by W.H. Watson, Attorney at Law, Greenville, North Carolina. The United States of America is represented by the Department

of Justice, Mark D. Friedman and Tracy Whitaker appearing.

On August 13, 1982, the plaintiff and the County of Pitt and Town of Ayden entered into a stipulation of facts. After considering the stipulation, the pleadings and the entire case file, the undersigned finds the following facts:

## FINDINGS OF FACT

The debtor filed a petition under Chapter 7 of the Bankruptcy Code on April 7, 1981. Mr. Richardson was appointed trustee on April 30, 1981.

First Federal Savings and Loan Association of Pitt County had a note from the debtor dated February 10, 1975, in the principal sum of One Hundred Thirty-Five Thousand and No/100 Dollars ($135,000.00) with interest at ten percent (10%) per annum. The note was secured by a deed of trust on all of the debtor's real property. The balance due on the note as of June 23, 1981, was One Hundred Thirty Thousand Eight Hundred Sixty-Four and 51/100 Dollars ($130,864.51).

On December 15, 1981, when the Order of Sale was entered, there were numerous creditors of the debtor with recorded judgments. Many of these judgment liens were in dispute and the issues as to such disputes were still pending on December 15, 1981. On July 29, 1982, an Order was entered setting aside certain judgments and determining that the following judgment creditors had valid liens against the debtor's property:

| Name | Date of Lien | Amount |
| --- | --- | --- |
| The Kingsford Company | June 9, 1980 | $ 4,296.00 |
| Imperial Briquet Corp. | June 9, 1980 | 4,623.00 |
| Tampax, Inc. | July 31, 1980 | 1,599.48 |
| Mead Products | July 31, 1980 | 4,829.02 |
| Quinn Company, Inc. | June 24, 1980 | 25,536.09 |
| Siler City Mills, Inc. | August 13, 1980 | 5,219.04 |
| Brown & Bigelow, Inc. | September 4, 1980 | 445.78 |
| Webster Industries, Inc. | September 4, 1980 | 4,202.30 |
| Penley Corporation | October 21, 1980 | 807.25 |
| Miles Laboratories, Inc. | October 23, 1980 | 669.68 |
| Kimberly-Clark Corporation | November 17, 1980 | 5,012.85 |
| Eagle Electric Mfg. Co., Inc. | November 25, 1980 | 789.99 |
| D-Con Company, Inc. | December 19, 1980 | 2,027.00 |
| Garvey Labelmatic | December 22, 1980 | 844.28 |
| Purex Corporation, Ltd. | December 31, 1980 | 1,276.06 |
| Frigidaire Company | December 31, 1980 | 1,418.91 |

The trustee has sold the debtor's real property and paid the claim of First Federal Savings and Loan of Pitt County. The trustee now has on hand a balance of Forty-Six Thousand Four Hundred Forty-Two and 85/100 Dollars ($46,442.85) from the proceeds of sale.

The Town of Ayden has filed claims for taxes, interest and advertising as follows:

| Year | Tax | Interest and Advertising | Assessment Date |
| --- | --- | --- | --- |
| 1979 | $6,145.99 | $ 961.12 | June 25, 1979 |
| 1980 | 4,111.63 | 275.76 | June 16, 1980 |
| 1981 | 1,691.14 | | June 24, 1981 |
| 1982 | 153.88 | | June 28, 1982 |

The County of Pitt has filed claims for taxes, interest and advertising as follows:

| Year | Tax | Interest and Advertising | Assessment Date |
| --- | --- | --- | --- |
| 1979 | $7,998.21 | $1,241.44 | June 29, 1979 |
| 1980 | 5,801.34 | 378.88 | June 27, 1980 |
| 1981 | 2,227.33 | | July 09, 1981 |
| 1982 | 202.66 | | June 28, 1982 |

The taxes for each year became due and payable on September 1 of the years in which assessed and the taxes were last due and payable without "interest" on January 5 of the year after the year in which assessed.

In North Carolina, a statutory tax lien on real property arises on January 1 of each year for the real property taxes assessed during the year and for all penalties, interest and cost. N.C.GEN.STAT. § 105–355(a).

## ISSUES

*One.* May the Court authorize the trustee in bankruptcy to sell real property of the estate free and clear of city and county statutory tax liens over the objection of the city and county, and if so, what is the effect on the statutory tax liens?

*Two.* Are 11 U.S.C. § 724(b) and 11 U.S.C. § 523(a) constitutional?

*Three.* How are the city and county tax claims in this case to be treated in the distribution of the funds in the possession of the trustee?

## CONSIDERATION OF ISSUES

### The Sale Issue

11 U.S.C. § 363(b) authorizes the trustee to sell property of the estate other than in

the ordinary course of business. 11 U.S.C. § 363(f) provides that the property of the estate may be sold free and clear of the interest of any entity under certain conditions. An entity is defined in 11 U.S.C. § 101(14) as including a governmental unit. 11 U.S.C. § 363(m) provides that the reversal or modification on appeal of an authorization under subsection (b) of section 363 of a sale of property does not affect the validity of a sale under such authorization to an entity that purchased such property in good faith unless such sale was stayed pending the appeal.

In this case, the court entered an order on December 15, 1981, directing the sale of the debtor's property under 11 U.S.C. § 363(b) and § 363(f). The Order of Sale was not appealed. No question has been raised as to the good faith of the purchaser. The issue as to the validity of the sale is now moot and need not be further considered by this Court.

The Order of December 15, 1981, specifically provides that the sale of the property by the trustee is to be free and clear of the statutory tax liens in question and that such liens shall attach to the proceeds of sale. There are adequate funds now on hand to satisfy the tax liens if this Court should determine that the taxing authorities are entitled to payment. The effect of the Order of December 15, 1981, is to allow the purchaser at the trustee's sale to acquire title to the property in question free and clear of the statutory tax liens of the County of Pitt and Town of Ayden.

### The Constitutional Issue

11 U.S.C. § 523(a) provides that a discharge under sections 727, 1141 or 1328(b) of the Bankruptcy Code does not discharge an individual from any debt for a tax or customs duty of the kind and for the period specified in § 507(a)(6) of the Bankruptcy Code. 11 U.S.C. § 727(a) provides that the Court shall grant the debtor a discharge, unless the debtor is not an individual. The debtor in this case is a corporation, not an individual. The case is a case under Chapter 7 of the Code. A discharge will not be entered in this case, and it is not necessary to consider the constitutionality of 11 U.S.C. § 523(a).

11 U.S.C. § 724(b) provides for the distribution of proceeds from the sale of property subject to a nonavoidable tax lien. First, distribution is made to any holder of an allowed claim secured by a lien on the property that is not avoidable and that is senior to the tax liens. Next, distribution is made to the priority claims specified in 11 U.S.C. § 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4) and 507(a)(5) to the extent of the amount of the tax liens. Then, if the amount of the statutory tax liens has not been exhausted, the subordinated tax lien claims are paid the difference between the amount paid the priority claims and the amount of the tax liens. Distribution is next made to the holders of nonavoidable liens which are junior to the tax liens. Finally, distribution is made on the statutory lien claims to the extent that the liens are unpaid. The result of the subordination process is that the statutory tax liens retain their status as secured claims, but their treatment in the scheme of distribution is altered so that instead of being paid ahead of secured creditors and all priority creditors, they are paid after the secured creditors with a senior lien and after the priority creditors in 11 U.S.C. § 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4) and 507(a)(5).

North Carolina has a tax lien statute which provides that a tax lien attaches to the parcel of real property taxed on the date as of which the property is to be listed for taxes. N.C.GEN.STAT. § 105–355. The priority of the tax lien is not affected by the transfer of title to the real property after the lien has attached, and the lien is superior to all other liens, assessments, charges, rights, and claims of any and every kind in and to the real property to which the lien attaches regardless of the claimant and regardless of whether acquired prior or subsequent to the attachment of the lien, subject to the provisions of the North Carolina Revenue Act.

It is apparent that 11 U.S.C. § 724(b) adversely affects the collection of city and

county taxes under N.C.GEN.STAT. § 105–355 and 356.

Article I, Section 8 of the United States Constitution provides that Congress shall have the power to establish uniform laws on the subject of bankruptcies. The Tenth Amendment of the United States Constitution provides that the powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people.

On several occasions when there has been a conflict between the powers of Congress to enact legislation to establish uniform laws on the subject of bankruptcies and the rights of the states under the Tenth Amendment, the Supreme Court recognized the paramount right of the United States Congress to enact uniform laws on the subject of bankruptcies. *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *International Shoe Co. v. Pinkus,* 278 U.S. 261, 49 S.Ct. 108, 73 L.Ed. 318 (1929).

The Tenth Amendment might well impose some restrictions on the powers of Congress if in the exercise of such powers it significantly alters the state's abilities to conduct activities which are typical of those performed by state and local governments in fulfilling their governmental responsibilities. *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). However, the facts of the present case do not present such a situation.

11 U.S.C. § 724(b) applies only in bankruptcy cases. The number of property owners in bankruptcy at any fixed time will be negligible when compared with the total property owners in the taxing unit. 11 U.S.C. § 724(b) does not deny payment of the tax lien claims, it simply subordinates such claims to the claims of certain other creditors. The impact of 11 U.S.C. § 724(b) on the ability of the taxing units to levy and collect taxes is quite minimal.

█ If Congress has the authority to enact uniform laws on the subject of bank-

ruptcies, it must be empowered to determine how the funds of the estate will be distributed. Otherwise, the authority is meaningless, for the states will consistently enact legislation to provide for payment of its claims ahead of all other obligations of the debtor, including the cost of administering the estate itself. Accordingly, it is concluded that the enactment of 11 U.S.C. § 724(b) by the United States Congress is a proper exercise of the authority vested in it by Article I, Section 8 of the United States Constitution and does not violate the rights of the states under the Tenth Amendment to the Constitution. *Perez v. Campbell, supra.*

## The Distribution Issue

In determining the effect of 11 U.S.C. § 724(b) on the tax claims, a further analysis of this section of the Bankruptcy Code and its application to the facts of this case is necessary.

Under 11 U.S.C. § 724(b) nonavoidable liens securing allowed tax claims are subject to subordination. The North Carolina real property tax lien is a nonavoidable lien. It must now be determined to what extent the tax lien claim is an allowable tax lien claim.

In North Carolina, property taxes are subject to a penalty only for late listing. However, if the taxes are not paid before January 6 of the year following the year in which assessed, then interest is charged on the taxes at the rate of two percent (2%) for the period January 6 to February 1 and three-fourths of one percent (¾%) each month thereafter. This results in an interest rate of approximately ten and one-fourth percent (10¼%) per year. N.C.GEN. STAT. § 105–360. The legal rate of interest on other statutory liens in North Carolina is eight percent (8%). N.C.GEN.STAT. § 24–1.

Interest has been defined as the compensation allowed by law or fixed by the parties for the use or detention of money. *Shealy v. United States,* 37 F.2d 918, 919 (D.S.C.1930). The word "penalty" has a much broader meaning and might well in-

clude interest. BLACK'S LAW DICTIONARY 1920 (4th ed. 1968). Also, the fact that the interest charged under N.C.GEN. STAT. 105–360 exceeds the legal rate for other statutory liens causes the charges to take on a characteristic of a penalty.

■ Accordingly, it is concluded that the interest charged on real property taxes under N.C.GEN.STAT. § 105–360(a) is a penalty within the meaning of 11 U.S.C. § 507(a)(6)(B). Although this case does not involve a dischargeability issue, it should be noted that if the interest charged on property taxes is not treated as a "penalty," then stale property taxes would not be discharged and this would be inconsistent with the intent of Congress when enacting 11 U.S.C. § 523(a).

In considering the effect of 11 U.S.C. § 724(b)(1) on the property tax claims, it should be remembered that state-created statutory tax liens are contrary to the underlying objective of equitable distribution of the debtor's estate to all creditors. Although statutory tax liens are not avoidable under the Bankruptcy Code, the continued recognition of such liens simply encourages the growth of special legislation favoring governmental claims. Even though statutory tax liens were not avoidable under the Bankruptcy Act, such liens were not treated by the courts with the same dignity as consensual liens. *United States v. Harrington*, 269 F.2d 719 (4th Cir.1959). The treatment of statutory tax liens in bankruptcy proceedings is the result of an evolutionary process and there is a thorough discussion of the law on this subject in 4 COLLIER ON BANKRUPTCY ¶ 67.24 and 67.281 (14th ed. 1983).

In the present case, First Federal Savings and Loan Association of Pitt County had a note and deed of trust dated February 10, 1975. Its deed of trust was perfected on February 10, 1975. The tax liens in favor of Pitt County and Town of Ayden for 1979 taxes arose on January 1, 1979, but the taxes were not assessed until June, 1979. The tax liens for 1980 taxes arose on January 1, 1980, and the town taxes were assessed on June 16, 1980, and the county taxes were assessed on June 27, 1980. On June 9, 1980, which was between the date the tax liens arose for 1980 taxes and the date the 1980 taxes were assessed, nonavoidable judgment liens were created in favor of The Kingsford Company in the amount of Four Thousand Two Hundred Ninety-Six and No/100 Dollars ($4,296.00) and in favor of Imperial Briquet Corporation in the amount of Four Thousand Six Hundred Twenty-Three and No/100 Dollars ($4,623.00). After the 1980 tax liens arose and after the docketing of the judgment liens in favor of The Kingsford Company and Briquet Corporation, numerous other judgments were docketed creating nonavoidable liens in 1980. These judgment creditors are reflected in the findings of fact. Subsequently, the 1981 and 1982 tax liens arose and these taxes were assessed.

11 U.S.C. § 724(b)(1) provides that proceeds of the property shall be distributed first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and is senior to such tax lien. In the case of *Pearlstein v. Small Business Administration,* 27 B.R. 153 (D.D.C.1982), it was decided that the word "senior" in 11 U.S.C. § 724(b)(1) means "senior in time" under federal law. This interpretation of the word "senior" means that 11 U.S.C. § 724(b)(1) will determine the relative priority of all secured claims where 11 U.S.C. § 724 is applicable. If this principle is applied in this case, it will not necessarily affect the result because the funds on hand are adequate to satisfy the security interest of First Federal Savings and Loan Association of Pitt County and provide a surplus of some Forty Thousand and No/100 Dollars ($40,000.00). However, the application of this rule in other cases will result in proceeds being distributed to consensual lien creditors whose liens are undersecured, but are senior in time to the statutory tax liens and thereby prevent distribution to the priority creditors in 11 U.S.C. § 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), and 507(a)(5). This seems inconsistent with the scheme of distribution intended by Congress.

11 U.S.C. § 724(b)(1) is a distribution statute. Its purpose is to subordinate the nonavoidable statutory tax liens and elevate the claims of certain unsecured creditors to a position in the scheme of distribution ahead of the statutory tax liens, but only to the extent of the amount of the subordinated tax liens. The unsecured creditors to be accorded such preferred treatment are those in 11 U.S.C. § 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4) and 507(a)(5). In North Carolina, all consensual lien creditors are on notice that real property taxes are provided a secured position ahead of all consensual lien creditors. N.C.GEN.STAT. § 105–356. The consensual lien creditor is aware of this when the lien is created. As a result, the subordination of the tax lien and the use of the sum of money equal to the lien to pay certain unsecured creditors does not create a hardship or injustice on the commercial lender. In North Carolina, the consensual lien creditor is not adversely affected by the subordination process under 11 U.S.C. § 724.

■ The seniority of security interests in property is ordinarily determined by state law, unless a federal statute specifically addresses the question as to a particular type of lien. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). 4B COLLIER ON BANKRUPTCY ¶ 70.-70[2] (14th ed. 1983). There is no indication from the legislative history of 11 U.S.C. § 724(b)(1) that Congress intended to change this general rule. 11 U.S.C. § 724 is a distribution statute only and not a federal rule for determining the seniority of security interests in property of the debtor. Otherwise, the unsecured creditors in 11 U.S.C. § 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4) and 507(a)(5) will be deprived of the very benefits which Congress intended to grant them at the expense of the statutory tax lien creditors and this benefit will be bestowed upon other lien creditors that would never have received such benefit under North Carolina law. The seniority of security interests in the property of the debtor should be determined by the law of North Carolina.

■ Before distribution can be made by the trustee, the allowable amount of the statutory tax lien claims must be determined. The 1979 and 1980 taxes are allowable as statutory tax liens. Interest on these tax claims will be allowed as a part of the secured claim at the eight percent (8%) statutory rate from January 5, 1979, and 1980 respectively until the petition was filed on April 7, 1981. *United States v. Harrington, supra.* The advertising costs incurred by the Town of Ayden and County of Pitt represent out-of-pocket expenses incurred by these entities and will be allowed as a part of the statutory tax lien claims. Post-petition interest on the 1979 and 1980 tax lien claims is not allowed. *United States v. Harrington, supra.* Although the 1979 and 1980 taxes, advertising costs and interest to the date of the filing of the petition are allowable lien claims, they must be subordinated as provided in 11 U.S.C. § 724(b).

■ The tax liens for 1981 taxes became effective on January 1, 1981, which was pre-petition. However, the taxes were not assessed until post-petition. If the debtor were an individual and these taxes were considered as the debtor's liability, then they would be subject to subordination under 11 U.S.C. § 724(b), but they would not be discharged under 11 U.S.C. § 523(a) because they were not assessed pre-petition. On the other hand, if the date the tax is assessed is used as the date for fixing liability, the taxes will be treated as a cost of administration under 11 U.S.C. § 503(b)(1)(B)(i) and will be paid by the trustee ahead of the subordinated statutory tax liens. After reading 11 U.S.C. § 507(a)(6)(B), it is concluded that the tax assessment date is the date upon which the tax liability arises. Under the facts of this case, the taxes were assessed after the bankruptcy petition was filed and the estate is liable for the taxes. Even if it is argued that the liability, once established, relates back to January 1 and supports a nonavoidable tax lien as of such time, it is apparent that the taxing entities will receive more favorable treatment by allowing

their 1981 tax claims as administrative costs under 11 U.S.C. § 507(a)(1) since this treatment will allow the claims to be paid out of the proceeds of the subordinated statutory liens for 1979 and 1980. Interest will be allowed on the 1981 tax claims at the rate provided in N.C.GEN.STAT. § 105–360 because penalties on taxes incurred by the estate are allowable. 11 U.S.C. § 503(b)(1)(C). The 1982 claim for taxes and interest will also be allowed as a cost of administration claim.

The money in the possession of the trustee will be distributed in accordance with the provisions of 11 U.S.C. § 724(b) in keeping with the principles previously set out.

The amount of the 1979 and 1980 tax lien claims with interest at the rate of eight percent (8%) from January 5, 1979, and 1980 respectively to April 7, 1981, and costs are subordinated to the priority claims in 11 U.S.C. § 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4) and 507(a)(5). The difference, if any, between the amount of the subordinated tax liens will be disbursed to the Town of Ayden and County of Pitt on a pro rata basis as a result of the provisions of N.C. GEN.STAT. § 105–356(a)(2) which provides that the liens for real property taxes of all taxing units shall be of equal dignity. The remaining funds in the possession of the trustee will be distributed under 11 U.S.C. § 724(b)(4) to First Federal Savings and Loan Association of Pitt County and then to the judgment creditors with nonavoidable liens according to the seniority of the liens under North Carolina law. N.C.GEN. STAT. § 1–233. Any remaining funds will be distributed in payment of the balance due on the subordinated tax lien claims for 1979 and 1980 taxes.