**In the Matter of ROHAR ASSOCIATES, INC., Bankrupt.**

**No. 72 B 226.**

United States District Court, S. D. New York.

April 22, 1974.

Richard C. Thompson, White Plains, N. Y., George E. Massey, White Plains, N. Y., of counsel, for The County Trust Co.

**638**

Paul J. Curran, U. S. Atty., for the S. D. of N. Y., Joseph P. Marro, Asst. U. S. Atty., New York City, for the United States.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

The County Trust Company, a commercial bank, in which the bankrupt had two accounts and to which the bankrupt was indebted, seeks to review an order entered on November 23, 1973 by Hon. Howard Schwartzberg, Bankruptcy Judge, which directs funds originally on deposit with the County Trust Company, subsequently turned over to the Trustee, in the amount of $5,391.24, to be turned over to tax claimants, Internal Revenue Service and New York State Tax Commission, for division between them in accordance with their agreement.

The Bankruptcy Judge made a finding of fact, that a certain checking account, maintained by the bankrupt, prior to adjudication, under the title "Rohar Associates, Inc.—Tax Account" represents withholding and sales taxes held in trust, in accordance with statutory requirements, for the benefit of federal and state taxing authorities, respectively.

The parties stipulated to certain facts and documents before the Bankruptcy Judge. Based on the stipulation and documents, and a hearing held October 3, 1973, the Bankruptcy Court found that for some years prior to the bankruptcy, Rohar Associates, Inc. maintained two checking accounts at Branch No. 31 of the County Trust Company. One was merely entitled "Rohar Associates, Inc." and bore account No. 31–207029. A substantial number of checks for various small amounts were issued on this account from time to time. The second account, No. 31–208653, was also entitled "Rohar Associates, Inc." on the statement, but the checks issued thereon were imprinted as "Rohar Associates, Inc., Tax Account."

■ The very title of the account as shown on the checks was a declaration against interest by Rohar Associates, Inc., and notice to the world that checks drawn thereon represented trust funds which had been segregated as such. See In Re Brown's Ex'r, 130 Misc. 865, 892, 226 N.Y.S. 1, 27, modified and aff'd, 225 App.Div. 759, 232 N.Y.S. 371; aff'd 252 N.Y. 366, 238 N.Y.S. 59, 169 N.E. 612.

Between December 21, 1970 and January, 1971, checks totalling $23,993.77, drawn on this account, were issued for federal tax payments. From May, 1967 to December, 1971, checks drawn by the bankrupt on the account were also used to pay New York State tax claims.

There was no evidence before the Bankruptcy Judge to indicate that the tax account had been used for other than tax purposes prior to April 29, 1971, when an unexplained check was drawn to Allstate Insurance Company in the amount of $107.44. A further check was drawn to Allstate on August 9, 1971 for $104.28, and on August 31, 1971 the bankrupt drew a check to its own order from the tax account for $17,447.44. This amount was greater than the combined tax claims of Internal Revenue Service and the New York State Department of Taxation and Finance.

The bankrupt immediately deposited this check in its other account at the County Trust Company, and drew therefrom a large number of small checks, apparently in payment of ordinary business expenses.

After noting the obligation of an employer to hold as a "special fund in trust for the United States," funds withheld or collected from any other person, including payroll taxes [26 U.S.C. § 7501(a)] and referring to similar statutory trust provisions existing under New York State law, the Bankruptcy Judge properly noted that the tax authorities, referred to by him as the "cestui que trust", "must sustain the burden of ascertaining and tracing the Trust property in the hands of the agent or trustee." He relied correctly on In Re Frank, 25 F.Supp. 1005 (S.D.N.Y. 1939)

"If the agent holds the taxes as a separate fund, which is his plain duty as a trustee, there will be no difficulty in collection of the entire fund by the government where the agent becomes insolvent. If he fails to keep the collected or withheld taxes separate, the government, like any other beneficiary of a trust, may follow the diverted fund into any property to which it may be traced. But where the taxes collected or withheld are not kept separate and cannot be traced, there is nothing to take the case out of the prevailing rule in trusts that a beneficiary who cannot find the trust property has no lien or charge spread over the entire estate of the faithless trustee."

It is a question of fact whether in this case the taxes collected or withheld were kept separate to an extent sufficient to permit tracing. The later case of United States v. Randall, 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971), is distinguishable because it relates to trust funds for taxes withheld subsequent to the filing of the petition, and not deposited in a segregated account.

The Bankruptcy Judge found that: "the bankrupt did maintain a special account for the payment of federal and state taxes, and * * * did in fact pay its taxes from this account. That the bankrupt may have violated its trust relationship by using some of the funds in this account for corporate purposes does not detract from, nor in any way defeat the existence of a trust relationship, which is mandated by statute [as to the balance not used]."

■ The diversion of some funds from the trust account appears to have occurred shortly prior to bankruptcy, and may be considered to have taken place under financial pressure sufficient to induce embezzlement. An inference of conscious wrongdoing follows from the fact that the bankrupt did not expend the money directly from the "tax account" for its own purposes. Because of the printed legend on the checks, to do so would have directed the attention of recipients to the fact that they were probably receiving trust funds or tax money, which might have to be repaid, and would call attention to the breach of trust. Rather, the bankrupt surreptitiously transferred a substantial sum of money to its other account, and paid its bills by checks drawn thereon.

■ The conclusion of the Bankruptcy Judge is considered to be correct; if not correct, at least to the extent that it depends upon findings of fact, we would be unable to say that it is clearly erroneous. This is the standard which we must apply if we are to reverse or modify his findings. Rule 810, Bankruptcy Rules. A finding of fact is not "clearly erroneous" unless "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U. S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

■ In lieu of presenting evidence at a plenary trial, the parties agreed to stipulate certain facts, and that the Court render its decision on those stipulated facts. Having done so, they may not be heard to complain upon review that the record is sparse. Appellants had the opportunity to go forward. While it is true claimants adduced no evidence that taxes were withheld or collected by the bankrupt, nor did they show any relationship between the amount held in the tax account prior to the apparant embezzlement and the amounts of their claims, they did present sufficient evidence, pursuant to the stipulation, to prove a *prima facie* case. They showed that the bankrupt was obliged by law to collect and withhold taxes, that it deposited funds in its tax account, paid State and Federal tax authorities substantial amounts out of that account and none out of the general account, and in the Bankruptcy Judge's words "simultaneously placed these de-

posits under the imprimatur of its statutory trust relationship." At least enough evidence was adduced to require their adversaries to assume the burden of going forward. It is now too late, having acquiesced in this form of trial by stipulation, for appellants to urge that additional proof should have been taken as to the circumstances surrounding the transfer of funds from the tax account to the regular account, or as to the actual tax obligations of the bankrupt, or to explain, either by the testimony of the drawer of the checks, or otherwise, the apparent disparity between the amount on deposit in the tax account and the actual tax claims made in the bankruptcy proceeding.

The conclusions of law of the Bankruptcy Judge are correct. His order is in all respects affirmed.

So ordered.