In re RAZORBACK READY–MIX
CONCRETE CO., Debtor.

RAZORBACK READY–MIX
CONCRETE CO., Plaintiff,

v.

UNITED STATES of America, and
District Director of Internal
Revenue, Defendants,

Charles D. Ragland, Commissioner of
Revenues, Department of Finance and
Administration, State of Arkansas, In-
tervenor.

Bankruptcy No. LR–82–516.
Adv. No. 83–336.

United States Bankruptcy Court,
E.D. Arkansas, W.D.

May 8, 1984.

C. Richard Crockett, Little Rock, Ark., for plaintiff.

Ann Fuchs, Dept. of Finance & Administration, Little Rock, Ark., for intervenor.

George W. Proctor, U.S. Atty., Little Rock, Ark., Lawrence P. Sherlock, Dept. of Justice, Tax Division, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEBTOR'S COMPLAINT TO RECOVER CERTAIN PREFERENCES AND SUSTAINING IN PART AND OVERRULING IN PART DEBTOR'S OBJECTION TO DEFENDANT'S CLAIM OF PRIORITY STATUS

ROBERT F. FUSSELL, Bankruptcy Judge.

On October 12, 1983, this matter came on to be heard. Plaintiff, Razorback Ready-Mix Concrete Co. appeared by counsel, C. Richard Crockett; Defendants, United States of America and District Director of Internal Revenue appeared by counsel, Lawrence Sherlock; and Intervenor, Charles D. Ragland, Commissioner of Revenues, appeared by attorney Ann Fuchs.[1] All parties presented to the Court a Stipulation of Facts, and the matter was submitted to the Court upon the pleadings, such Stipulation, administrative proceedings before the Court, briefs of counsel and oral argument.

The parties, for purposes of this action only, stipulated the following facts and statements:

1. The Plaintiff is the Debtor in a Chapter 11 proceeding which was instituted by the filing of a petition on June 9, 1982.

2. On June 3, 1982, Defendant filed a tax lien for $21,442.68, copy of which is attached hereto, and the amount of the lien was unpaid at the time Plaintiff filed its petition herein.

3. Within a period of 90 days prior to the filing of the petition, the Debtor made payments to the Defendant, United States of America, totalling $71,266.25. The payments were made by check on the following days and in the following amounts:

| | | |
|---|---|---|
| March 23, 1982 | — | $15,000.00 |
| April 12, 1982 | — | $41,266.25 |
| May 18, 1982 | — | $15,000.00 |

4. The payments were made because of failure by Plaintiff to pay F.I.D.C. taxes for the four taxable quarters of 1981. The total of $71,266.25 was applied by the Defendant in the following manner: taxes—$51,714.53, interest—$5,747.34, and penalties—$13,804.38.

5. The Debtor was insolvent at the time of the payments.

6. The payments enabled the Defendant to receive more than it would have if this case were a proceeding under Chapter 7, the payments had not been made, and the Defendant had received payment on the tax liabilities under the provisions of the Bankruptcy Code. This is true because in a hypothetical Chapter 7 case the tax claim of the State of Arkansas would have shared equal priority with the unpaid federal tax liabilities, and the State would have

---

1. The Commissioner of Revenues for the State of Arkansas intervened in this lawsuit originally objecting to the claim of the defendant that it was secured. Stipulation 10 entered into by the plaintiff, defendant, and intervenor is to the effect that the defendant does not claim any interest in this proceeding as a secured creditor, but only as a priority unsecured creditor and a creditor with administrative claims. The State of Arkansas, therefore, did not file a brief; its objection rendered moot by agreement of the parties.

received part of the $71,266.25 which was paid to the Defendant.

7. The payments to the Defendant were made from the general checking account of the Debtor. Although the Debtor had a payroll account, only funds which were sufficient to pay the net amount of the paychecks were transferred from the general account to the payroll account. Taxes which were withheld from the wages of the Plaintiff's employees were normally kept in the general account until turned over to the United States. All revenues of Plaintiff were deposited in the general account, and only Plaintiff had the right to disburse funds from such account.

8. Between the time that the taxes in question were withheld from the wages of the Debtor's employees and the time that the payments were made to the Defendant, the general checking account of the Debtor was reduced on occasions to near zero.

9. In order to make the payments to the Defendant, the Debtor borrowed funds in excess of the payments, either by itself or through its president, which funds were deposited into the general checking account and used as operating funds.

10. The United States of America does not claim any interest in this proceeding as a secured creditor, but only as a priority unsecured creditor and as a creditor with administrative claims.

This is an adversary proceeding in which the debtor is seeking to recover as preferences certain monies paid to the United States. The debtor is also objecting to the priority to be granted to certain claims made by United States for interest and penalties on federal taxes.[2]

■ The pertinent facts in this proceeding are set forth in the Stipulation of Facts which has been filed by the parties and set out above. The debtor filed its petition under Chapter 11 of the Bankruptcy Code on June 9, 1982. Within the 90 day period preceding the date of filing the debtor made three payments to the United States totalling $71,266.25. The payments were made on account of unpaid withholding-F.I. C.A. taxes withheld from the wages of the debtor's employees during 1981, plus interest and penalties thereon. The total of $71,266.25 was applied in payment of $51,-714.53 in tax, $5,757.34 in interest and $13,-804.38 in penalties.

The payments were made to the United States out of the debtor's general checking account. This was the account through which the debtor normally paid taxes withheld from wages of its employees. The usual procedure followed by the debtor was that only an amount necessary to pay net wages was transferred from the general account to the payroll account; withheld amounts were not transferred. After the taxes in issue were withheld from the employees' wages the payments to the United States were not timely made but made in March, April, and May of 1982. In order to make these particular payments to the United States the debtor borrowed funds and, in addition to funds on hand, which were deposited in the general account, wrote three checks to the Government for the unpaid taxes, including penalties and interest.

The debtor, in asking this court to consider these three payments preferential transfers, relies on Section 547(b) of the Bankruptcy Code (11 U.S.C.) which provides as follows:

**2.** The debtor in its brief also raised the issue of whether the defendant's claim that the Internal Revenue Code, § 7501, impresses a trust on after acquired funds should be considered by the court. The debtor contends that the defendant failed to raise this defense in its answer to the debtor's complaint. The debtor contends that Bankruptcy Rule 7008 adopts Rule 8 of the F.R.C.P. and F.R.C.P. 8(c) requires that a party state in short and plain terms his defenses to each claim asserted. The debtor further asserts

that the defendant is "not saved by the proof" because "none of the facts stipulated would give indication that the defendant was a beneficiary of a trust." (p. 11–12, debtor's brief) The court would make the observation that, although the defendant did not plead specifically, all parties agreed to submit this case on the stipulations *and* the briefs. As such the defense can be considered by this court by implied agreement. See Bankruptcy Rule 7015 making F.R.C.P. 15(b) applicable in adversary proceedings.

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor-

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made-

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer-

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of the transfer; and

(5) that enables such creditor to receive more than such creditor would receive if-

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

From the Stipulation of Facts it can be seen that several of the requirements for a preference have been met with respect to the payments in question. In fact, with respect to the monies which were used to pay interest ($5,747.34) and penalties ($13,804.38), the Government has conceded that such payments were preferences and can be recovered by the debtor.

The Government contends, however, that the monies which were used to pay the taxes cannot constitute a preference because they were not "property of the debtor" as Section 547(b) requires, citing as

support for this position Section 7501(a) of the Internal Revenue Code (26 U.S.C.).[3] This section of the Revenue Code provides that the amount of any tax withheld or collected by one person from another person "shall be held to be a special fund in trust for the United States" and was an express congressional recognition of the nature of withheld taxes. *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). Such taxes are ordinarily never considered property of the employer having the duty to withhold. Initially, the tax monies are the property of the employees from whose wages the monies are withheld, and, after the withholding is accomplished, 26 U.S.C. Section 7501(a) provides that the monies belong to the United States and are held in trust by the employer.

The legislative history of Section 547 supports a conclusion that the party having the duty to withhold is merely holding the money in trust until it can be turned over to the United States. The report which accompanied the bill in the House of Representatives contained the following language:

A payment of withholding taxes constitutes a payment of money held in trust under Internal Revenue Code section 7501(a), and thus will not be a preference because the beneficiary of the trust, the taxing authority, is in a separate class with respect to those taxes, if they have been properly held for payment, *as they will have been if the debtor is able to make the payments.* [House Report No. 95–595, 95th Cong., 1st Sess. 372–373 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6328–6329.] [emphasis added]

The debtor contends that since the actual trust fund monies withheld in 1981 had

---

3. Section 7501, Internal Revenue Code:

(a) General Rule—Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed,

collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose.

(b) Penalties—For penalties applicable to violations of this section, see sections 6673 and 7202.

been commingled in the general fund account and spent by the time the payments were made in 1982, the United States' claim is no different from the claims presented by any other creditor. It has been stipulated that taxes withheld by this debtor from employee's wages were normally retained in the general checking account with only monies for net wages transferred to the payroll account and that the balance in the general account was reduced to near zero several times in the interval between the withholding of wages and the payments to the United States. The actual monies withheld, then, were undoubtedly not part of the payments made. The debtor in fact borrowed additional funds prior to the payments to the Government, which were deposited in the general checking account to be used in the business. It is the Government's position that these later funds became subject to the trust provisions of 26 U.S.C. Section 7501(a), and when the debtor voluntarily turned those funds over to the United States, it was merely performing, albeit untimely, the duties of a trustee which Congress envisioned.

There are cases which have dealt with a possible conflict between 26 U.S.C.

§ 7501(a) and the payment of claims under the bankruptcy laws. See, e.g. *United States v. Randall*, 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971); *In re Rohar Assoc., Inc.*, 375 F.Supp. 637 (S.D.N.Y. 1974). These cases followed the rule that in order to impose a trust under 26 U.S.C. Section 7501, the withheld taxes must be traceable as a specific fund. In *Randall, supra*, because there was no specific fund the Supreme Court decided that the United States was not entitled to payment in accord with the priorities set forth in the Bankruptcy Act. Conversely, in *In re Rohar Assoc., supra*, because there was a specific fund, the tax claimants were entitled to the fund as against the claim of the estate.

The *Randall* and *Rohar* decisions, however, are distinguishable from the instant case because the Government in those cases was seeking payment from the estate for monies which the taxpayers in those cases had neglected to pay and were still unpaid at the time of filing. In the instant case the monies were paid pre-filing, and the estate is seeking to recover these monies labeling them preferential transfers.[4]

**4.** Congress also discussed the effect of 26 U.S.C. Section 7501(a) on the Bankruptcy Code in the legislative history accompanying Section 541(a) of the Code. In the Congressional Record at 124 Cong.Rec. H 11,114 (Sept. 28, 1978); S 17,-430–431 (Oct. 6, 1978) it is stated:

Section 541. Property of the estate: The Senate amendment provided that property of the estate does not include amounts held by the debtor as trustee and any taxes withheld or collected from others before the commencement of the case. The House amendment removes these two provisions. As to property held by the debtor as a trustee, the House amendment provides that property of the estate will include whatever interest the debtor held in the property at the commencement of the case. Thus, where the debtor held only legal title to the property and the beneficial interest in that property belongs to another, such as exists in the case of property held in trust, the property of the estate includes the legal title, but not the beneficial interest in the property.

As to withheld taxes, the House amendment deletes the rule in the Senate bill as unnecessary since *property of the estate does not include the beneficial interest in property held by the debtor as a trustee.* Under the Internal

Revenue Code of 1954 (Section 7501), the amounts of withheld taxes are held to be a special fund in trust for the United States. Where the Internal Revenue Service can demonstrate that the amount of taxes withheld are still in the possession of the debtor at the commencement of the case, then if a trust is created, those amounts are not property of the estate. Compare *In re Shakesteers Coffee Shops*, 546 F.2d 821 (9th Cir.1976) with *In re Glynn Wholesale Building Materials, Inc.*, (S.D. Ga.1978) and *In re Progress Tech Colleges, Inc.*, 42 AFTR 2d 78–5573 (S.D.Ohio 1977).

Where it is not possible for the Internal Revenue Service to demonstrate that the amount of taxes withheld are still in the possession of the debtor at the commencement of the case, present law generally includes amounts of withheld taxes as property of the estate. See e.g., *United States v. Randall*, 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1973) (sic.) and *In re Tamasha Town and Country Club*, 483 F.2d 1377 (9th Cir.1973). Nonetheless, a serious problem exists where "trust fund taxes" withheld from others are held to be property of the estate where the withheld amounts are commingled with other assets of the debtor. *The courts should permit the use*

As noted above, the intent of Congress in enacting Section 547 of the Bankruptcy Code, as reflected in the legislative history accompanying that section, was that a "payment of withholding taxes constitutes a payment of money held in trust ... and thus will not be a preference." The legislative report adds the proviso that this is true "if [the taxes] have been properly held for payment," but considers the proviso as having been complied with "if the debtor is able to make the payments." House Report No. 95–595, 95th Cong., 1st. Sess. (1977) p. 373, U.S.Code Cong. & Admin. News 1978, p. 6329. Thus, although Congress recognized the need under 26 U.S.C. Section 7501(a) of having a specific fund upon which to impress a trust, it also recognized that in situations like the one presented here if the debtor was able to make the payments, designated the payments as "taxes due" *and* delivered the payments to the government, the monies could be labeled trust funds and the debtor's duty as trustee was accomplished.

Although the debtor did not specifically separate the withheld taxes from its general operating funds, payments for these taxes from this account were as per the debtor's usual payment practice. This court agrees with the Government's assertion that the designation by the debtor of the three payments in issue as "taxes due" along with delivery to the Government protected these funds just as if the taxes had been set aside as a separate fund. The debtor should not now be allowed to fall back upon its own accounting practices to undo that which was accomplished before the filing of the bankruptcy petition.

The debtor in order to prevail in a preference action must show, under Section 547(b) of the Bankruptcy Code, that a transfer of "property of the debtor" took place. The debtor has not met this burden. The tax amounts in issue paid by the debtor prior to the filing of the bankruptcy petition do not constitute preferential transfers.

■ The second issue before the court is whether pre-petition interest and penalties are entitled to priority status. As noted above, the Government, in its original brief, conceded that the payments by the debtor for interest and penalties on the withheld taxes are recoverable as preferential transfers. The Government also concedes that any recovery of penalties will be allowable only as an unsecured claim against the estate and is not entitled to any priority. A claim for a tax penalty may be given priority status only to the extent that the penalty is in compensation for an actual pecuniary loss incurred by a governmental taxing authority. Punitive penalties on pre-petition tax claims are not disallowed under § 502 of the Bankruptcy Code but are allowable as a general unsecured debt. The Government contends while making these concessions, however, that any recovery of interest will result in a claim in favor of the United States which is entitled to priority payment under Section 507(a)(6)(C).

■ The issue of whether pre-petition interest on a tax claim may be given priority status is complicated by the fact that § 507 of the Bankruptcy Code is silent on

*of reasonable assumptions under which the Internal Revenue Service, and other tax authorities, can demonstrate that amounts of withheld taxes are still in the possession of the debtor at the commencement of the case. For example, where the debtor had commingled that amount of withheld taxes in his general checking account, it might be reasonable to assume that any remaining amounts in that account on the commencement of the case are the withheld taxes.* In addition, Congress may consider future amendments to the Internal Revenue Code making clear that amounts of withheld taxes are held by the debtor in a

trust relationship and, consequently, that such amounts are not property of the estate. [Emphasis supplied.]

These notes reveal that Congress considered that commingled funds could constitute a trust fund within the meaning of 26 U.S.C. Section 7501(a) even if the funds remained in the bank account at the commencement of the case. Again these cases involve a different fact situation, namely, where withheld monies had not been paid over to the government pre-filing. These cases undoubtedly were cited by Congress as support for its premise that payment of withheld taxes will not be considered a preference.

the subject of interest.[5] A review of other sections of the Code as well as accompanying legislative history, however, offers some assistance in determining whether pre-petition or matured interest is entitled to the same priority as the principal amount upon which the interest accrues.

Section 502(b)(2) of the Code provides that a claim which has been filed shall be allowed except to the extent the claim is for unmatured interest, i.e., interest which accrues after the filing of the petition. The Government contends that the section implies that the term "claim" includes interest accruing prior to the filing of the petition citing Section 101(4) of the Bankruptcy Code. This section of the Code defines the term "claim" in as broad a manner as possible as any "right to payment" whether it is liquidated, unliquidated, matured, unmatured or subject to any contingency. The Government utilizing this broad definition of "claim" concludes that Section 507(a)(6), which provides that priority is granted to "unsecured *claims* of governmental units, to the extent such *claims* are for tax," necessarily includes any matured interest on the claim allowed under Section 502(b)(2).

The legislative history of § 507 of the Code reveals, however, that the Senate attempted to include a provision in Section 507 which would have expressly granted priority to interest on an equal basis with taxes, and that the provision was deleted and did not appear in the Code as enacted. The Government asserts that the express provision concerning pre-petition interest was not deleted from the Code because Congress intended the opposite result, but because Congress viewed the provision as superfluous due to the definition of the term "claim."

The legislative history of another provision of the Code, Section 726, which provides for the distribution of the assets of

5. Section 507(a)(6): (Priorities)

(6) Sixth, allowed unsecured claims of governmental units, to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(c) of this title, not assessed before but assessable, under applicable law or by agreement, after, the commencement of the case;

(B) a property tax assessed before the commencement of case and last payable without penalty after one year before the date of the filing of the petition;

(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;

(D) an employment tax on a wage, salary, or commission of a kind specified in paragraph (3) of this subsection earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition;

(E) an excise tax on—

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition;

(F) a customs duty arising out of the importation of merchandise—

(i) entered for consumption within one year before the date of the filing of the petition;

(ii) covered by an entry liquidated or reliquidated within one year before the date of the filing of the petition; or

(iii) entered for consumption within four years before the date of the filing of the petition but unliquidated on such date, if the Secretary of the Treasury certifies that failure to liquidate such entry was due to an investigation pending on such date into assessment of antidumping or countervailing duties or fraud, if information needed for the proper appraisement or classification of such merchandise was not available to the appropriate customs officer before such date; or

(G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss....

an estate under Chapter 7, is also helpful in resolving this second issue. When the original House bill was referred to the Senate, the Senate included a provision in Section 726 which expressly provided that the term "claim" included interest accruing prior to the filing of the petition. The Senate Report accompanying the bill stated:

This section also specifies that interest accrued on all claims (including priority and nonpriority tax claims) which accrued before the date of the filing of the title 11 petition is to be paid in the same order of distribution of the estate's assets as the principal amount of the related claims. [Senate Report No. 95–989, 95th Cong., 2nd Sess. 97 (1978), U.S.Code Cong. & Admin.News 1978, p. 5883.]

The House with Senate approval deleted that express provision, and accompanying that deletion was the following statement in the Congressional Record:

The House amendment deletes a provision following section 726(a)(6) of the Senate amendment providing that following section 726(a)(6) of the Senate amendment providing that the term "claim" includes interest due owed before the date of the filing of the petition as unnecessary since a right to payment for the interest due is a right to payment which is within the definition of "claim" in section 101(4) of the House amendment. [124 Cong.Rec. H 11098 (Sept. 28, 1978); S 17,415 (Oct. 6, 1978).]

That subsection distributes property of the estate first to priority *claims;* second, to timely unsecured *claims;* third, to untimely unsecured *claims;* fourth, to penalty *claims;* fifth, in payment of *post-petition* interest on the above *claims;* and sixth, to the debtor. The Government argues that if the term "claim" does not include pre-petition interest, "then it could never be paid, despite the fact that the estate contains assets sufficient to pay post-petition interest."

The court concludes from a review of this legislative history as well as the Code provisions that it cannot agree with the Government's position with regard to whether pre-petition interest on the tax claims should be given priority status. Clearly, the interest is a part of the government's allowed "claim." But just as clearly creditors of debtors may have claims and, under the Code, these claims may be given different classifications for purposes of distribution and priority status. For example, a creditor may file a claim as secured but, upon subsequent determination, part of that claim may be relegated to an unsecured status. Another example, as the debtor correctly points out, is the penalty taxes claimed herein. The penalty taxes, although part of the defendant's "claim," do not share priority status with the tax claim. The issue is not, as appears to be the focus of the Government's argument, whether the interest is part of the defendant's claim or whether it may be considered within the definition of "claim." Rather the issue is whether that part of the claim for pre-petition interest must necessarily be given priority status because the claim for taxes is so prioritized. § 507 does not provide for priority treatment of pre-petition interest on tax claims. Such a provision, in fact, was deleted. The court is persuaded that the Code does not provide, either expressly or impliedly, priority status for the pre-petition interest claimed by the defendant (just as it does not for pre-petition penalties), but it is allowable as a general unsecured claim.

■ The last issue before the court is whether post-petition taxes, interest and penalties are allowable as administrative expenses entitling these claims to payment as § 507(a)(1) priority claims. The debtor has raised some question as to the priority to be granted taxes, interest and penalties incurred after the filing of the petition basing its conclusion on Section 502(i) of the Code and *In re New England Carpet Co., Inc.,* 26 B.R. 934 (Ver.1983).[6] The

---

6. § 502(i) provides:

A claim that does not arise until after the commencement of the case for a tax entitled to

priority under section 507(a)(6) of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disal-

Government asserts that all such claims are administrative expenses under Section 503(b)(1)(B) and (b)(1)(C) and must be allowed priority status and payment as administrative expenses. Section 503(b)(1) provides as follows:

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case:

(B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(6) of this title; or

(ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after commencement of the case; and

(C) any fine, penalty or reduction in credit, relating to a tax of a kind specified in sub paragraph (B) of the paragraph:

The statute is clear in providing that any tax incurred by the estate, other than one specified in Section 507(a)(6), is entitled to administrative expense status. The exception for 507(a)(6) taxes merely excludes taxes incurred prior to the filing of the petition. Section 503(b)(1)(B) refers to any tax incurred by the estate after the filing of the petition. This court agrees with the Government's contention that Section 507(a)(6) refers only to pre-petition taxes. This is made clear by Section 502(b) which provides that the amount of contested claims shall be determined "as of the date of the filing of the petition ..." The Government, thus, concludes correctly that post-petition taxes are entitled to administrative expense status.

This court also agrees with the Government's assertion that Section 502(i) does not change this conclusion. Section 502(i) is designed to deal with situations where a tax is *incurred* prior to the filing of the petition but does not become *due and payable* until after the filing date; i.e., even though the tax becomes due after the filing date, the amount of the claim shall be determined under Section 502 the same as if the tax was payable before the filing date.

Here the taxes were incurred subsequent to the commencement of the case and the Government argues that they should be entitled to administrative expense status just like any other expense incurred by the debtor-in-possession in operating the business. This view has been adopted by a number of courts and by the commentators, and this court agrees. See *In re E M C Industries, Inc.*, 27 B.R. 696 (S.C.1983); *In re Westholt Manufacturing Inc.*, 20 B.R. 368 (Kan.1982) (Post-petition, pre-confirmation taxes may be administrative expenses.); 3 *Collier on Bankruptcy*, para. 502.09, 502–93, (15th Ed.1981).[7]

lowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition. See also note 7, infra.

**7.** The interpretation of § 502(i), as read with other sections of the Code, is noted in 3 Collier on Bankruptcy, ¶ 502.09, 502–93 footnote 1 (15th ed. 1981). As stated therein:

... It should not be overlooked and bears repeating, that whether or not a claim is entitled priority under section 507 is a vastly different conceptual proposition than in section 503 dealing with administrative expenses arising following the filing of the petition. To the extent a claim is allowed to have administrative expense status under section 503, it is given priority under section 507(a)(1), which provides that administrative expenses allowed under section 503(b) among other, are entitled to that first priority. To the extent, therefore, that section 502(i) deals with post-petition taxes, it does not deny to such taxes the priority status accorded them by section 507(a)(6). All section 502(i) really does is make plain that a tax claim entitled to priority under section 507(a)(6), even though it arises after the commencement of the case and, therefore, might logically be entitled to administrative status under section 503(b) and, therefore, a first priority under section 507(a)(1), is allowed to the extent allowable "as if such claim had arisen before the date of

Finally, unlike pre-petition tax claims, interest and penalties on post-petition taxes are also allowed priority payment since Section 503(b)(1)(C) expressly provides for such allowance. Thus the court finds that the debtor's objection to these expenses being given priority status as administrative expenses should be overruled. The court is aware that the debtor was unable to proceed with its Plan of arrangement but does not find that this fact alters its conclusion determined herein that post-petition taxes, interest and penalties are entitled to priority status as administrative expenses of the estate.

Accordingly, for the foregoing reasons, it is hereby

ORDERED and ADJUDGED that the debtor's complaint to recover certain payments to the defendant as preferential transfers is granted as to pre-petition interest and penalties but denied as to pre-petition taxes. It is further

ORDERED and ADJUDGED that the debtor's objection to the defendant's claim of priority status for pre-petition interest and penalties is sustained; that part of the defendant's claim for pre-petition interest and penalties being allowed as a general unsecured claim. It is further

ORDERED and ADJUDGED that the debtor's objection to defendant's claim that post-petition taxes, interest and penalties are allowable as administrative expenses and entitled to payment at § 507(a)(1) priority claims is overruled.

the filing of the petition." The allocation of such status as a pre-petition claim denies administrative status. To that extent, therefore, the tax claim is not given a first priority as an administrative claim under section 507(a)(6).

It bears repeating that save for administrative expenses under section 503, all claims asserted against the assets of a debtor for purposes of distribution are deemed to be claims existing at the time of the filing of the petition.