In re R & T ROOFING STRUCTURES
& COMMERCIAL FRAMING,
INC., Debtor.

UNITED STATES of America,
Claimant–Appellant,

v.

Harold Z. DANIEL, Trustee–Appellee.

No. 87–2985.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 14, 1988.

Decided Oct. 23, 1989.

As Amended on Denial of Rehearing
Jan. 11, 1990.

Ferguson, Circuit Judge, filed concurring opinion.

Gary D. Gray, Dept. of Justice, Washington, D.C., for claimant-appellant.

Bruce D. Roberts, Cooke, Roberts & Reese, Reno, Nev., for trustee-appellee.

Before FERGUSON, BRUNETTI and LEAVY, Circuit Judges.

BRUNETTI, Circuit Judge:

## OVERVIEW

The United States appeals from a grant of summary judgment in favor of the debtor's trustee in bankruptcy. The bankruptcy court and the district court both held that the government's pre-petition seizure of the debtor's only bank account constituted a voidable preferential transfer under the Bankruptcy Code, 11 U.S.C. § 547(b) (1982 and Supp. IV 1986). The government seized the account to satisfy the debtor's delinquent Federal Insurance Contributions Act ("FICA") and employee withholding taxes. The government argues that summary judgment should not have been granted because a factual question exists in whether the funds seized can be traced to unpaid taxes and that if they can, these funds are not the property of the debtor and not subject to section 547.

We find that the government failed to carry its burden of establishing the existence of a genuine issue of material fact in responding to the trustee's motion. Accordingly, the decision of the court below is affirmed. 79 B.R. 22.

## FACTS AND PROCEEDINGS BELOW

The debtor, R & T Roofing, failed to pay over certain federal taxes to the government which it withheld from its employees' wages during the last quarter of 1979. The IRS filed a notice of a tax lien arising from the delinquent employee withholding taxes on July 18, 1980. On October 23, 1980, well after forty-five days from the due date of the taxes, the government seized $18,850.18 from the debtor's general operating account in satisfaction of the tax lien, perfected outside the 90 day preference period. On January 9, 1981, less than 90 days after the seizure, the debtor filed a petition in bankruptcy for Chapter 7 relief.

The trustee sought the return of the seized funds under the presumption that administrative expenses and claims for contributions to employee benefit plans had a higher priority under section 507 of the Bankruptcy Code, and that tax claims were subordinated to these claims under section 724(b) of the Code, 11 U.S.C. § 724(b) (1982 and Supp. IV 1986). The government's response to the trustee's complaint admitted that it seized the money of the debtor but alleged that the court lacked subject matter to hear the dispute and moved for judgment on the pleadings.

The bankruptcy court denied the motion and observed that the "substance of the trustee's complaint" was based on section 547 of the Bankruptcy Code. It then undertook a relatively detailed discussion of a section 547(b) claim and indicated that the funds seized by the government were recoverable as a preferential transfer. As part of this discussion the court noted that the government had not alleged the existence of a trust, which would have excluded the funds from the bankruptcy estate and made section 547(b) inapplicable. Accordingly, the trustee was requested to amend his complaint to include a section 547 cause of action.

The trustee complied and filed a second motion for summary judgment. The government responded with a cross motion for summary judgment, this time alleging a trust. The bankruptcy court declared the seizure a voidable preference and granted summary judgment in favor of the trustee, finding that "each element of a Section 574(b) [sic] Avoidable Preference has been established by admitted facts."

On appeal to the district court the government argued that the pre-petition seizure did not constitute a transfer of the debtor's property because the funds seized were held in trust for the government pursuant to section 7501 of the Internal Revenue Code, 26 U.S.C. § 7501 (1982), which impresses a statutory trust on withheld taxes. The court rejected this argument in part because there was no segregation of assets that would be indicative of a trust, and in part in reliance on *United States v.*

*Randall,* 401 U.S. 513, 515, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971), which held that the priority provisions of the Bankruptcy Code superseded section 7501. The court noted first that funds held in trust for the benefit of the United States cannot implicate section 547(b) of the Bankruptcy Code because there is no transfer of the debtor's property, but declined to find a trust based on the bankruptcy court's finding that the funds were seized from the debtor's "general office bank account," and on the absence of any indication that the seized funds could be traced to withheld taxes.

The government also claimed that the transfer occurred more than ninety days prior to the filing, i.e., when the notice of the tax lien was filed, that section 547 therefore did not apply, citing *In re Madrid,* 725 F.2d 1197 (9th Cir.), *cert. denied,* 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984), and that the levy and seizure constituted the fixing of a nonavoidable statutory lien under section 547(c)(6). The district court distinguished *Madrid,* and dispensed with the statutory lien argument. The order of the bankruptcy court granting summary judgment in favor of the trustee was affirmed.

The government appeals only the first issue: the district court's determinations that the funds seized by the government were not held in trust by the debtor, and that the statutory trust imposed by section 7501 of the Internal Revenue Code is superseded by the Bankruptcy Code.

## STANDARD OF REVIEW

A grant of summary judgment is reviewed *de novo. Paulson v. Bowen,* 836 F.2d 1249, 1250 (9th Cir.1988). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986).

## DISCUSSION

### I.

■ Section 547(b) of the Bankruptcy Code empowers the trustee in bankruptcy to avoid certain transfers made by a debtor within the 90 days preceding the filing of the petition in bankruptcy. It reads as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Thus, for the trustee to establish a voidable preference he must prove each of the following seven conditions:

(1) a transfer

(2) of the debtor's property

(3) to or for the benefit of a creditor

(4) for or on account of an antecedent debt

(5) made while the debtor was insolvent

(6) within 90 days of the filing of the petition in bankruptcy

(7) that enables the creditor to receive more than he would under a Chapter 7 liquidation.

■ The second element is the focus of this appeal. Section 541(b) of the Bank-

ruptcy Code, 11 U.S.C. § 541(b) (1982 and Supp. II 1984), provides that "[p]roperty of the estate does not include—(1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor." Thus, property held in trust by the debtor is not subject to the voidable preference rule of section 547(b). *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 2314 n. 10, 76 L.Ed.2d 515 (1983). Section 7501 of the Internal Revenue Code provides that "[w]henever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States." 26 U.S.C. 7501 (1982). It follows that withheld FICA and employee taxes are impressed with a statutory trust and should be excluded from the bankruptcy estate. *See id.* The government argued that the funds it seized were in trust for the purposes of section 541, and that there could not therefore have been a voidable transfer under section 547(b).

In rejecting this argument, the district court relied on the *Randall* decision, which held that section 7501 of the Internal Revenue Code was subordinated by the priority provisions of the Bankruptcy Code. *Randall* involved an attempt by the IRS to recover withholding taxes from the debtor that had accrued after the commencement of the bankruptcy case under the theory that a section 7501 trust existed that excluded the funds that were owing from the estate. The only assets of the debtor were commingled in a single account. Unable to show segregated assets, the government urged the Court that the misconduct of the debtor in failing to maintain a separate account should not defeat the trust. The Supreme Court disagreed, distinguishing the Tax Code from the Bankruptcy Act: "We deal, however, with a Bankruptcy Act which we conclude is an overriding statement of federal policy on this question of priorities." *Randall,* 401 U.S. at 515, 91 S.Ct. at 993. The Court noted that the first statutory priority of payment is the costs and expenses of administration and con-

cluded that "the statutory policy of subordinating taxes to costs and expenses of administration would not be served by creating or enforcing trusts which eat up an estate, leaving little or nothing for creditors and court officers whose goods and services created the assets." *Id.* at 517, 91 S.Ct. at 993.

The *Randall* holding has led to inconsistent decisions. Some courts have read *Randall* as requiring the government to trace commingled funds to withheld taxes before a statutory trust would be found. *See, e.g., Lusk Corp. v. Arizona State Tax Commission,* 462 F.2d 187, 189 (9th Cir. 1972) (applying Arizona law); *In re Rohar Assocs., Inc.,* 375 F.Supp. 637 (S.D.N.Y. 1974). This circuit has gone farther and refused, under the *Randall* analysis, to exclude trust assets from the bankruptcy estate, even when tracing was possible. *See, e.g., Matter of Shakesteers Coffee Shops,* 546 F.2d 821, 824 (9th Cir.1976), *cert. denied,* 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1071 (1977); *In re Tamasha Town and Country Club,* 483 F.2d 1377, 1379 (9th Cir.1973).

*Randall,* however, and the cases cited above, were decided under the old Bankruptcy Act, and the appellants argue that the legislative history behind the passage of the new Code indicates a Congressional intent to overrule or modify the *Randall* decision. Several courts have since examined the interplay between section 7501 of the Internal Revenue Code and section 547(b) of the new Bankruptcy Code. Because the legislative history lends itself to varying interpretations, the courts have been troubled by this issue, and they have arrived at contrary results.

The case at bar is unique in that it appears to be the first time a court has been asked to find a trust where there has been a pre-petition seizure of funds by the IRS; all cases reported have involved a voluntary pre-petition payment of taxes by the debtor.

## II.

The appellant argues that Congress, in enacting the 1978 Bankruptcy

Code, relaxed the tracing requirements that courts had imposed subsequent to the *Randall* decision. The House Report accompanying the House bill on section 547 contained the following commentary:

> Subsection (b) is the operative provision of the section. It authorizes the trustee to avoid a transfer if five conditions are met. These are the five elements of a preference action.... Second, the transfer must be for or on account of an antecedent debt owed by the debtor before the transfer was made....
>
> ....
>
> This provision will not apply to permit the trustee to recover estimated tax payments by a debtor, because no tax is due when the payments are made. Therefore, the tax on account of which the payment is made is not an antecedent debt. *A payment of withholding taxes constitutes a payment of money held in trust under Internal Revenue Code § 7501(a), and thus will not be a preference* because the beneficiary of the trust, the taxing authority, is in a separate class with respect to those taxes, *if they have been properly held for payment,* as they will have been *if the debtor is able to make the payments.*
>
> Subsection (c) contains exceptions to the trustee's avoiding power....
>
> ....
>
> The second exception protects ordinary course of business ... transfers....
>
> In the tax context, this exception will mean that a payment of taxes when they are due, either originally or under an extension, or within 45 days thereafter, will not constitute a voidable preference. However, if a payment is made later than the last day on which the tax may be paid without penalty, then the payment may constitute a preference....

H.R.Rep. No. 595, 95th Cong., 2nd Sess. at 373, reprinted in 1978 Code Cong. & Admin. News 5787, 6328–29 (emphasis added) (quoted in *Drabkin v. District of Columbia,* 824 F.2d 1102, 1107 (D.C.Cir.1987)).

The first emphasized passage is relied on by the appellant as support for the proposition that Congress intended to overrule or modify the holding in *Randall.* A reading of the entire passage, however, particularly the other emphasized statements and the final paragraph, reveals that the intent of Congress is susceptible to several interpretations. At least two courts, *In re Rodriguez,* 50 B.R. 576 (Bankr.E.D.N.Y.1985), and *In re Razorback Ready–Mix Concrete Co.,* 45 B.R. 917 (Bankr.E.D.Ark.1984) concluded that a trust will be inferred any time "the debtor is able to make the payments." In those cases the debtor made voluntary pre-petition payments to the government. The act of payment was held to be sufficient to create or reconstitute the trust funds from the commingled account of the debtor. Similarly, in *Begier v. United States IRS,* 878 F.2d 762 (3rd Cir.1989), the court found that the debtor's voluntary pre-petition payments are to be construed as held in trust for the government and, therefore, not voidable as a preference under § 547(b). However, the trial court in *In re Olympic Foundry Co.,* 63 B.R. 324 (Bankr.W.D.Wash.1986), *rev'd,* 71 B.R. 216 (9th Cir. BAP 1987) (summarily reversed with no explanation of grounds for reversal), focused on the phrase "if they have been properly held for payment," and held that no trust would be found if the funds were not segregated and could not be traced by the government to the taxes that were due.

The District of Columbia Circuit, in *Drabkin v. District of Columbia,* 824 F.2d 1102 (D.C.Cir.1987), embarked on a detailed analysis of this legislation and decided that, because the quoted language above dealt with antecedent debt, the timing of the payment would be the crucial factor in determining whether a payment would be potentially voidable: a timely payment, i.e., made within forty-five days after the due date, would not be voidable under any circumstances because it would not be for an antecedent debt (element 4 of a voidable transfer). *Id.* at 1115. Thus, the determination of whether a trust existed would not be relevant in situations involving timely payments of taxes in the period immediately preceding the filing. Late payments, on the other hand, would be for antecedent debt and therefore would be voidable as preferential transfers *unless* they could be traced by the government to unpaid taxes. *Id.*

We adopt *Drabkin's* view and hold that the government may only assert that the funds used or seized to pay the taxes were held in trust if the pre-petition payments or seizures pursuant to levy occurs, as the seizure did here, more than forty-five days after the due date of the tax payment. As part of the trust analysis, the government is required to trace the debtor's assets to the unpaid taxes.

The *Drabkin* court looked to the Congressional Record for guidance regarding the tracing requirement. The Congressional Record states: "Where the amounts of withheld taxes are commingled with other assets of the debtor ... courts should permit the use of reasonable assumptions under which the Internal Revenue Service, and other taxing authorities, can demonstrate that the amounts withheld are still in the possession of the debtor at the commencement of the case." 124 Cong.Rec.H. 11,114 (Sept. 28, 1978); S. 17430–431 (Oct. 6, 1978). Senator DeConcini, commenting on the "reasonable assumptions" language, stated that "where the debtor had commingled that amount withheld in his general checking account, it might be reasonable to assume that any remaining amounts in that account on the commencement of the case are the withheld taxes." 124 Cong.Rec. 34016–17 (Oct. 5, 1978) (statement of Senator DeConcini). The appellant asserts that this statement derives from the common-law principle that a fiduciary dissipates his own funds in a commingled account first, and that any funds remaining in the debtor's account should be conclusively presumed to be trust assets.

■ This assertion, however, misconstrues the common-law and arguably extends Mr. DeConcini's statement beyond what he intended. Tracing of commingled funds as a general accounting principle is not foreign to the courts, and a doctrine known as the "lowest intermediate balance" rule has evolved from equitable principles of trusts: "[W]here a wrongdoer mingles another's money with his own, from which commingled account withdrawals are from time to time made, there is a presumption of law that the sums first withdrawn were moneys of the tort-feasor...." *Republic Supply Co. v. Richfield Oil Co.*, 79 F.2d 375, 378 (9th Cir. 1935). *See also Schulyer v. Littlefield*, 232 U.S. 707, 34 S.Ct. 466, 58 L.Ed. 806 (1914); *Connecticut Gen. Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612 (1st Cir. 1988); *First Wisconsin Fin. Corp. v. Yamaguchi*, 812 F.2d 370, 375 (7th Cir.1987). If the amount on deposit is depleted below the amount of the trust, however, the amount withdrawn is treated as lost, and subsequent deposits do not replenish the trust. Thus, the beneficiary is entitled to the lowest intermediate balance between the date of the commingling and the date of payment. *Yamaguchi*, 812 F.2d at 375; *Nation–Wide Check v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 216 (1st Cir.1982).

### III.

The pleadings below are limited, which has contributed to the difficulty of the resolution of this case. In its answer to the trustee's first motion for summary judgment the government raised only jurisdictional issues. After the bankruptcy judge pointed out that no trust had been alleged, the government moved for summary judgment alleging, *inter alia,* that "[t]o the extent that money in debtor's account resulted from debtor's accumulation of 'trust fund' taxes, no property of the debtor was involved; that instead the funds were those of debtor's employee's [sic], held in trust for payment to the United States; and that a factual question exists as to whether property of the debtor was transferred, and if so, to what extent." This statement was unsupported by further legal argument or supporting documents; consequently it did nothing to controvert the trustee's assertion that property of the debtor had been seized by the government. *See First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); Fed.R. Civ.P. 56(e).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." Furthermore, "[i]f the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleading in order to preclude summary judgment." *T.W. Electrical Service v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir.1987); Fed.R.Civ.P. 56(e).

▮▮▮ As the moving party, the trustee had the burden of proving each element of a section 547(b) preferential transfer. As we have already noted, the only element that is disputed is whether property of the debtor was transferred. Here the trustee presented an affidavit that the funds seized were in a commercial business account. The bank forwarded copies of the account to the International Revenue Service, and the Service has filed nothing to demonstrate that the account contained any trust assets. This was sufficient to shift the burden to the government to establish an issue of fact as to whether these funds could properly be characterized as trust assets. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Note, *The Movant's Burden in a Motion for Summary Judgment*, 1987 Utah L.Rev. 731, 734–35. This the government failed to do. In its opposing memorandum the government merely alleged, with no specific facts, that the account contained trust funds. It did not allege that the account contained commingled assets or that tracing could establish that trust assets were seized, and it made no effort to rebut the trustee's claim that the seizure was made on a general business account.

## CONCLUSION

Each element of a 547(b) avoidable preference was established. The government failed to establish the existence of an issue of material fact, and summary judgment was properly granted in favor of the trustee.

AFFIRMED.

FERGUSON, Circuit Judge, concurring:

I concur in Judge Brunetti's opinion, but add an additional observation.

The delinquent taxes for which the levy and seizure were made were for the fourth quarter of 1979. The funds seized by the IRS in the fourth quarter of 1980 were funds in a general commercial account of the debtor. There was no evidence presented to show that the withheld tax funds were ever kept in the account. Although the government was furnished copies of the statements of the account, it did not present the statements or any summaries thereof to the court, nor did the government claim that the statements demonstrated any commingling of trust funds.

The case is one where the government failed to produce any evidence that the general account on the date of seizure consisted of any amounts of money collected and withheld from employee wages. In fact, the government in its pleadings admitted twice that it seized the property of the debtor.

The government was lethargic in prosecution of the litigation and, as a result, lost.