**In re David G. AYALA, Debtor.**

**Bankruptcy No. 82C–00198.**

United States Bankruptcy Court,
D. Utah.

Dec. 13, 1983.

---

Karl L. Hendrickson and Bonnie Jean Esplin, Deputy County Attys., Salt Lake City, Utah, for Salt Lake County.

Anna W. Drake, Nielson & Senior, Salt Lake City, Utah, for herself as trustee.

## MEMORANDUM OPINION AND ORDER

GLEN E. CLARK, Bankruptcy Judge.

Debtor filed this Chapter 7 case on January 26, 1982. Based on debtor's schedules, he was the owner of the property at 460 Penny Avenue during all of 1981.

On May 17, 1982, the Salt Lake County Treasurer filed a proof of claim for "garbage fees for the tax year 1981" in the amount of $60.69. According to the proof of claim, the claim was founded on an open account, which was to become due on May 21, 1982. The Treasurer claimed priority, not secured or unsecured status for the claim.

On February 17, the trustee objected to the claim "on the grounds that no documentation of the indebtedness has been filed." On February 24, the Treasurer filed a response to the trustee's objection. Attached to the response was a computer printout entitled "Office of Salt Lake County Treasurer Statement of Delinquent Taxes" dated May 21, 1982. The printout lists debtor's name and the Penny Avenue address and indicates the following items and amounts:

| Taxes | Penalty | Fee Rate | Interest | Total |
|-------|---------|----------|----------|-------|
| 48.00 | 10.00 | .12 | 2.69 | 60.69 |

On March 2, the trustee withdrew her objection to the Treasurer's claim.

On April 5, 1983, the trustee filed her final report. On April 6, the office of the Clerk of this Court informed the court that it questioned whether the Treasurer's claim was entitled to priority status, noting that the Treasurer had recently been filing claims for garbage fees as priority claims.

Because of the likelihood of the recurrence of the question of the priority of the Treasurer's claims for garbage fees, the court deemed it appropriate to raise the issue in this case and to provide the Treasurer and the trustee an opportunity to brief the issue.

On May 3, 1983, the Treasurer filed a memorandum in support of priority status for his claim. According to that memorandum,

Garbage collection services in the unincorporated portion of Salt Lake County are rendered by the Salt Lake County Special Service District No. 1. This district was created by resolution of the Board of County Commissioners on January 19, 1977, pursuant to and in accordance with the provisions of the Utah Special Service District Act (Title 11, Chapter 23, U.C.A.1953, as amended). Section 9 of that resolution (Resolution No. 399) provides for the rendering of garbage collection services pursuant to the imposition of an appropriate fee on the recipient of the services. This was formally approved by the Board of Trustees of Salt Lake County Special Services District No.

1, in Resolution No. 1, adopted August 1, 1977, wherein the fee was imposed upon any private residence in the unincorporated area of the Salt Lake County (i.e., the boundaries of Special Service District No. 1). Provision was further made for the certification of unpaid fees to the County Treasurer for collection in accordance with the procedures customarily utilized for real property taxes. This procedure is specifically authorized by § 11–23–20 U.C.A.1953, as amended. It provides, with respect to delinquent fees and charges that:

"The governing authority of a service district may, by ordinance or resolution, provide that fees and charges for water, sewer or garbage services supplied by the service district shall, if not paid when due, be certified to the treasurer and assessor of the county in which the delinquent premises are located. These delinquent fees and charges, together with penalties and applicable interest shall, immediately upon this certification, become a lien on the delinquent premises on a parity with and collected at the same time and in the same manner as general county taxes that are a lien upon the premises."

The Treasurer says that his claim for garbage fees is an unsecured tax entitled to priority under 11 U.S.C. § 507(a)(6) before certification to the Treasurer and Assessor of Salt Lake County and a secured claim upon certification. The Treasurer does not specify when or if the claim in this case was certified but, based on the Treasurer's proof of claim, the court assumes that the claim was not certified in time to become a lien on debtor's property.[1] Therefore, the claim for garbage fees in this case is either an unsecured claim or a claim entitled to priority.

The Treasurer relies, for its claim to priority, on principles established under for-mer law, citing *City of New York v. Feiring,* 313 U.S. 283, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941); *In re Industrial Cold Storage and Ice Co.,* 163 F. 390 (E.D.Pa.1908); and *McDowell v. City of Barberton,* 38 F.2d 786 (6th Cir.1930). *Industrial Cold Storage* addressed the question of whether the term "taxes" under Section 64a of the Bankruptcy Act[2] included water rents due to a municipality and found that it did, based on the following factors:

(1) the water rent was levied annually against the real property receiving the water in the same manner a tax was levied;

(2) it was made a lien by statute in the same manner and was enforced by the same remedies appropriate to the collection of a tax; and

(3) the amount due was used for "public purposes."

*McDowell* addressed the same question and found the water rent in question to be a tax because the state legislature, by authorizing the water works to assess water rents against the property supplied with water and by permitting collection in the same manner as city taxes, had taken debts for water out of the class of contract debts and placed them within the realm of taxes.

*Feiring* related to a city sales tax. The court recognized that the question was federal not a state question. Whether an obligation was a tax was not to be controlled by the characterization given it by state or local law. Instead, status as a tax was to be determined by the terms and purposes of the Bankruptcy Act. The test used by the court to determine whether the sales tax was a tax within the meaning of the bankruptcy law was whether it was:

laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it.

---

1. The proof of claim says the account was not to become due until May 21, 1982, four months after the filing of the petition in this case. Moreover, in its prior order requesting briefs, the court indicated that if the Treasurer claimed a lien, its claim should be amended. The claim has not been amended and no new claim has been filed.

2. The pertinent language of Section 64a was: "The court shall order the trustee to pay all taxes legally due and owing by the bankrupt."

Thus, courts interpreting former law distinguished voluntary from involuntary obligations, private from public purposes, and non-tax from tax collection remedies.

The Treasurer argues that its claim for garbage fees fits the test for taxes under former law because it is involuntary, is imposed for a public purpose, and is collected in the same manner as other tax debts. In addition, the Treasurer argues that garbage fees are taxes because county residents must pay the assessed fee regardless of their preference or use of county garbage collection services.

The trustee argues that cases under former law do not control under Section 507(a)(6), which describes specifically the taxes entitled to priority and does not mention garbage fees. The trustee also argues that the method of collection of a fee should not make it a tax. Finally, the trustee argues that:

> In the Senate debates concerning the passage of § 507(a)(6) it was proposed that § 507(a)(6)(J) be passed to provide priority status for "certain tax related liabilities which are not true taxes or which are not collected by regular assessment procedures..." (Senate Report N. 95–989, 95th Cong., 2d Sess. (1978) 72, U.S.Code Cong. & Admin.News 1978, p. 5858).

Because proposed Section 507(a)(6)(J) was not adopted, the trustee argues, Congress did not intend to include tax related liabilities which are not true taxes or which are not collected by regular assessment procedures.

The trustee's argument is persuasive. Even if a debt might have been classified as a tax under former law, it is not entitled to priority under Section 507(a)(6) unless it is covered by one of the subsections of Section 507(a)(6). Section 507(a)(6) does not accord priority status to all taxes. It gives priority only to those taxes specifically named. Thus, even if the fees in this case would have been classified as taxes under the tests used in *Industrial Cold Storage, McDowell,* and *Feiring,* they are not entitled to priority unless they come within one of the subdivisions of Section 507(a)(6).

Section 507(a)(6) accords sixth priority status to "allowed unsecured claims of governmental units, to the extent that such claims are for: (A) a tax on or measured by income or gross receipts ...; (B) a property tax assessed before the commencement of the case and last payable without a penalty after one year before the date of the filing of the petition; (C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity; (D) an employment tax ...; (E) an excise tax ...; (F) a customs duty ...; or (G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss."

The fees in question in this case clearly are not covered by subsections (A), (D), (E), or (F) of Section 507(a)(6). Thus, the court must explore the meaning of subsections (B), (C), and (G) to test their coverage of the Treasurer's claim.

Are the garbage fees imposed by the Salt Lake County Service District No. 1 property taxes? Nothing in the resolutions or statutes cited by the Treasurer calls garbage fees property taxes. Instead, garbage fees, when delinquent and properly certified, are collected in the same manner as property taxes that become liens on real property.

Two cases under the Bankruptcy Code, *In re Adams,* 17 B.R. 742 (Bkrtcy.E.D.Pa.1982) and *In re New England Carpet Co.,* 26 B.R. 934 (Bkrtcy.D.Vt.1983), have examined Section 507(a)(6)(B) with respect to fees for municipal services that were, under state law, to become liens on real property and be enforced in the same manner as tax liens. In *Adams,* Chapter 13 debtors owed a debt to the City of Philadelphia for water and sewer rents. The court found that the debt was in the nature of a property tax because under state law it would, if delinquent, become a lien on the real property receiving water and sewer services. In *New England Carpet Co.,* the court applied the reasoning of *Adams* to water rents.

If *Adams* and *New England Carpet Co.* are correct statements of the law, they clearly mean that the fees in this case are priority taxes under Section 507(a)(6)(B). Debtor is the owner of the real property subject to the fees. The fees are not named taxes in the governing state laws but they are, as the Treasurer has argued, in the nature of taxes and to be collected in the same manner as taxes.

The trustee's argument from Senate Report No. 95–989 indicates that *Adams* and *New England Carpet Co.* may have been wrongly decided. The Senate Report, however, when read in context, does not support the trustee's argument. Section 507(a)(6)(J) of the Senate Bill (S.2266), as approved with the amendments proposed by the Senate Finance Committee, gave priority to:

> liabilities of the debtor as a third party for failing to surrender or to pay an obligation in response to a levy for taxes of another, or for paying or providing funds for the payment of wages without provision for taxes required to be withheld therefrom ... (timing provision deleted).

Senate Report No. 95–1106, 95th Cong., 2d Sess. 16 (1978), said that this provision related to "[c]ertain tax-related liabilities which are not true taxes or which are not collected by regular assessment procedures." Two examples were given: first, "the liability under section 3505 of the Internal Revenue Code of a lender who pays wages directly to employees of another employer or supplies funds for the payment of taxes," and second, "the liability under section 6332 of the Internal Revenue Code of a person who fails to turn over money or property of the taxpayer in response to a levy." *Id.* at 16–17 n. 14. Senate Report 95–989, 95th Cong., 2d Sess. 72 (1978) made an identical explanation of proposed Section 507(a)(6)(J). Neither of these examples, however, resembles the type of liability involved in this case. Fees for municipal services, such as those in this case, were priority taxes under former law. Congress' deletion of proposed Section 507(a)(6)(J), in

light of the examples given does not appear to represent a change in the law. Therefore, I see no reason not to follow *Adams* and *New England Carpet Co.* in this case.

The remaining question is whether the penalty, fee rate, and interest on the Treasurer's claim for garbage fees in this case are entitled to priority treatment. Section 507(a)(6)(G) provides that:

> [Priority status is to be given to] a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.

This section means that "any tax liability which, under otherwise applicable tax law, is collectible in the form of a 'penalty,' is to be treated in the same manner as a tax liability." 124 Cong.Rec.H. 11113 (daily ed. Sept. 28, 1978); 124 Cong.Rec.S. 17430 (daily ed. Oct. 6, 1978). But priority treatment for tax liabilities collectible in the form of a penalty is limited. "In bankruptcy terminology, such tax liabilities are referred to as pecuniary loss penalties. Thus, any tax liability which under the Internal Revenue Code or State or local tax law is payable as a 'penalty,' in addition to the liability of a responsible person under section 6672 of the Internal Revenue Code, will be entitled to the priority which the liability would receive if it were expressly labeled as a 'tax' under the applicable tax law. However, a tax penalty which is punitive in nature is given subordinated treatment under section 726(a)(4)." *Id.*

An obligation, to be allowed priority under Section 507(a)(6)(G), must meet three requirements: first, it must be a penalty; second, it must be related to a claim of a kind entitled to priority under Section 507(a)(6); and third, it must be in compensation for actual pecuniary loss. Because neither the "fee rate" nor the "interest" claimed by the Treasurer are penalties, they do not qualify for priority under Section 507(a)(6)(G). No other subparagraph of Section 507(a)(6) grants priority to such charges. The ten dollar penalty claimed by the Treasurer qualifies for priority treatment if it is in compensation for actual pecuniary loss. The parties presented no

evidence on the question of actual pecuniary loss. But, as the court in *New England Carpet Co.* noted, "it is questionable that a compensatory role should be assigned to th[is] penalt[y] in light of the fact that interest is additionally charged. The pecuniary loss to the [Treasurer] is the loss of the use of the [garbage fee]. This is precisely the kind of loss that interest is supposed to compensate. Therefore, without the submission of evidence by the [Treasurer] to show that the penalt[y] [is] not punitive, the penalt[y] [is] not entitled to priority." *New England Carpet Co.,* supra at 936–937. Based upon the foregoing,

IT IS ORDERED that the proof of claim of the Salt Lake County Treasurer filed in this case on May 17, 1982 is allowed as a priority claim in the amount of $48.00 and as a general unsecured claim in the amount of $12.81. It is further ordered, with respect to the Treasurer's allowed claim of $12.81, that $10.00 of that amount be subordinated pursuant to 11 U.S.C. § 726(a)(4).