**In re Elmer Eugene PALMER, Debtor.**

Bankruptcy No. 384–31572 M–13.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

July 5, 1985.

Steven A. Maurer, Atty., Tax Div., Dallas, Tex. for the IRS.

Elizabeth A. Bates, Dallas, Tex. for debtor.

**MEMORANDUM OPINION**

ROBERT C. McGUIRE, Bankruptcy Judge.

This opinion constitutes Findings of Fact and Conclusions of Law. Additional Findings of Fact and Conclusions of Law on file herein are incorporated herein by reference.

Elmer Eugene Palmer ("Debtor") filed for relief under Chapter 13 of Title 11 of the United States Code on October 5, 1984. Subsequently, the Internal Revenue Service ("IRS") timely filed a proof of claim in the total amount of $65,458.84. Of this total, the IRS claimed to possess a valid secured interest in Debtor's estate in the amount of $64,854.67. The IRS based its claim on tax liens filed in Travis County, Texas on December 5, 1983, June 22, 1984, and June 28, 1984. The IRS claim related to Debtor's federal income tax liabilities for 1980, 1981, 1982 and 1983. The tax liabilities were assessed within 240 days prior to Debtor filing the petition. The amount of the IRS claim has been stipulated to by both parties and breaks down as follows:

| | | |
|---|---|---|
| Prepetition Income Tax | - | $35,111.02 |
| Prepetition Interest | - | $16,471.61 |
| Prepetition Penalties | - | $13,876.21 |

The IRS filed an objection initially to Debtor's proposed Chapter 13 plan. Debtor's plan, filed on November 21, 1984, listed the IRS as a priority creditor, only to the extent of his federal income tax liabilities. Thus, Debtor listed the IRS as a general unsecured creditor for its prepetition interest and penalty claims.

Because of the *de minimus* value of the collateral asserted by the IRS to secure its

claim, the IRS agreed that, for purposes of confirmation of Debtor's plan, its claim could be treated as unsecured.

Debtor and the IRS have stipulated to the following conclusions of law; to wit:

(1) Debtor's income tax liability constitutes a sixth priority claim under 11 U.S.C. 507(a)(6) (now 507(a)(7) ).

(2) Debtor's liability for pre-petition penalties constitutes a general unsecured claim not accorded priority status.

(3) The Pre-1984 Amended Bankruptcy Code governs the instant case.

The IRS further agreed to drop its objection to the feasibility of Debtor's proposed plan. Debtor also presented evidence that no property or funds would be available to the general unsecured creditors if the case were converted to Chapter 7.

The remaining disputed legal issue before this Court is a narrow one; to wit: Whether prepetition interest on taxes receiving priority status are also considered priority claims.

## THE STATUS OF PREPETITION INTEREST ON PRIORITY TAXES

Congress enacted 11 U.S.C. 507(a)(6)(A)(ii)–(iii) of the 1978 Bankruptcy Reform Act ("Code") which states in pertinent part:

Sixth, allowed unsecured claims of governmental units, to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case; ...

The majority of case law prior to this point has held prepetition interest on priority taxes should receive priority treatment. Many of these cases, however, do not discuss the legislative history of § 507(a)(6) in depth. The statute fails to define whether interest is considered a "penalty" for pecuniary loss under § 507(a)(6)(G), or a "tax" under § 507(a)(6)(A), or is to be excluded from priority status.

The IRS has argued that § 101(4) of the Code defines "claim" in such broad terms as to include any right to payment whether matured or unmatured, and that § 502(b) provides that prepetition interest shall be allowed as part of the claim. Thus, the government argues it should be allowed to receive prepetition interest on its claim based on the plain language of the statute. The court, in *In re Razorback Ready-Mix Concrete Co.*, 45 B.R. 917, 12 B.C.D. 356, 360 (Bankr.E.D.Ark.1984), found this argument to be unpersuasive. Unlike the *Razorback* decision which held that the court should not treat prepetition interest as a priority claim, I find that the legislative history supports treating prepetition interest as a priority claim.

The House passed the original H.R. 8200 on February 1, 1978. That bill was then sent to the Senate for approval by the Senate. The Senate Judiciary Committee ("Judiciary Committee"), the first step in the legislative process of that House, drafted its own, albeit, more or less similar bill, S.2266. *See*, S.Rep. No. 95–989, 95th Cong., 2d Sess. (1978), U.S. Code Cong. & Admin. News 1978, 5787. On July 14, 1978, the Judiciary Committee reported the bill to the Senate, which immediately submitted it to the Senate Finance Committee ("Finance Committee") for consideration of relevant tax provisions.

Because S.2266 bore certain resemblances to the original H.R.8200, the Senate

Committee Reports, in certain respects, resembled the House Report. However, particular sections of the bills, and thus, the reports differ. The Judiciary Committee provided, at least initially, that subsection (a) of the relevant section specifically include prepetition interest on a tax claim as a priority claim. *See,* S.Rep. No. 95–989, 95th Cong.2d, 20 (1978), U.S. Code Cong. & Admin. News 1978, 5806. However, the final version of S.2266 as amended by the Finance Committee failed to provide expressly that prepetition interest be accorded priority status. *See generally,* S.2266, 95th Cong., 2nd Sess., as reported by the Senate Judiciary and the Senate Finance Committee (1978).

Upon amending relevant tax provisions, the Senate Finance Committee issued an explanatory report which provided, among other things, that

> [T]he treatment given to interest on tax claims under S.2266 which may be summarized as follows ... Interest which accrued before the Title 11 petition receives the same priority as the tax claim itself. If the tax is entitled to the sixth priority, so also is the related interest. If the tax is only a general unsecured claim, the interest on the tax is a portion of the same claim and therefore receives the same treatment.

S.Rep. No. 95–1106, 95th Cong., 2nd Sess., 20 (1982).

H.R. 8200, the House version of the Bankruptcy Reform Act, and S.2266, the Senate version, ultimately resembled each other insofar as neither bill, as presented to and passed by its respective body, contained an explicit provision regarding prepetition interest on taxes. Thus, the legislative history regarding prepetition interest assumes an even more important role in the interpretation of § 507(a)(6). The two bills actually differed little in regard to priority tax claims except insofar as

> ... House bill (H.R.8200) gave priority to certain allowed unsecured tax claims 'other than claims for fines or penalties

not in compensation for actual pecuniary loss' of governmental units. The prohibition against such claims was retained in the Senate bill (S.2266) although in other ways the provision was radically revised. Under S.2266 this priority was accorded to unsecured claims (with a prohibition against fines or penalties) to the extent such claims were for taxes or custom duties. The final compromise bill, like original H.R.8200, accords separate treatment for taxes on income or gross receipts (subparagraph (A)), property taxes (subparagraph (B)), taxes required to be collected for which the debtor is liable (subparagraph (C)), employment taxes (subparagraph (D)), excise taxes (subparagraph (E)), and customs duties under subparagraph (F). Rather than expressing a prohibition against tax claims for fines or penalties not in compensation for actual pecuniary loss, subparagraph (G) states the same principle in the affirmative.[1]

3 *Collier on Bankruptcy* § 507.04, at 507–38 (15th ed. 1984).

The Senate ratified S.2266 by striking the provisions of H.R.8200 after the enacting clause and inserting the provisions of the final version of S.2266. This action occurred on September 7, 1978. *See,* 3 *Collier on Bankruptcy,* (Appendix) *Legislative History,* at VIII–I (15th ed. 1984). At this point, Congressional and Senate floor leaders met to implement a compromise Bankruptcy Reform Act acceptable to both Senate and Congress.

The House amended the Senate version of H.R.8200 (S.2266 in reality), and adopted this as a compromise bill which ultimately became the Bankruptcy Reform Act. 124 Cong.Rec. H11047–117 (daily ed., September 28, 1978).

The following remarks of Congressman Don Edwards were made when introducing the compromise bill to the House of Representatives on September 28, 1978:

> Mr. Speaker, the amendment that I am offering today is the culmination of over

---

**1.** Although the discussion in *Collier, supra,* refers to § 507(a)(7), the redesignation of the section does not affect the substantive discussion of the legislative history.

8 years' work by a congressional commission, two congressional committees, and numerous outside groups. The amendment accomplishes the substantial reform of the bankruptcy laws for the first time in 40 years. It is a major effort, one that everyone involved can be proud of.

This bill passed the House last February 1, and passed the Senate with an amendment on September 7, just 3 weeks ago. In those 3 weeks, my distinguished colleague from Virginia ... and I have worked closely with the Senate managers of the bill, and we have reached an agreement on the resolution of the differences between the two bills. The agreement was reached after a public meeting this week in which the final major issues were resolved. This amendment that I am offering is the substance of that agreement.

The amendment retains many of the important reforms included in the original House bill, yet adopts many of the fine and constructive changes made by the Senate.

124 Cong.Rec., *supra*, at H.10089, *reprinted in* U.S. Code Congressional and Adm. News, 95th Cong., 2nd Sess., 1978, p. 6436.

Representative Edwards went on further to point out that "[s]ection 507(a)(6)(A) [now 507(a)(7)(A) ] of the House amendment represents a compromise between similar provisions contained in H.R.8200 as passed by the House and the Senate amendment." 124 Cong.Rec., *supra*, at H11095, *reprinted in* U.S. Code Cong. & Admin. News, 95th Cong., 2nd Sess. 1978, p. 6451.

Congressman Edwards also explained 507(a)(6) as follows:

Sixth Priority. The House amendment modifies the provisions of both the House bill and Senate amendment in the case of sixth priority taxes. Under the amendment, the following Federal, State and local taxes are included in the sixth priority:

---

For purposes of the above priority rules, the House amendment adopts the provision of the Senate bill that any tax liability which, under otherwise applicable tax law, is collectible in the form of a "penalty" is to be treated in the same manner as a tax liability. In bankruptcy terminology, such tax liabilities are referred to as pecuniary loss penalties. Thus, any tax liability which under the Internal Revenue Code or State or local tax law is payable as a "penalty" in addition to the liability of a responsible person under section 6672 of the Internal Revenue Code, will be entitled to the priority which the liability would receive if it were expressly labeled as a "tax" under the applicable tax law. However, a tax penalty which is punitive in nature is given subordinated treatment under section 726(a)(4).

124 Cong. Rec., *supra*, at H11112–3, reprinted in U.S. Code Cong. & Admin. News, 95th Cong., 2nd Sess. 1978, p. 6568.

Senator DeConcini, the Senate leader, mirrored Representative Edwards' statements in his introduction of the bill before the Senate. *Id.* at H11112, *reprinted in* U.S. Code Cong. & Admin. News, *supra*, at pp. 6567–68. Neither speaker indicated the final amended version of the bill treated prepetition interest any differently than it was intended to be treated under S.2266.

A review of the legislative history makes it clear that the introductory remarks of the floor leaders are important in discerning the legislative intent of § 507. Thus, the issue to be resolved then becomes whether the interest on taxes constitutes a "penalty for compensation for pecuniary loss" under § 507(a)(6)(G).

One commentator has defined interest as follows:

[I]nterest charged on a delinquent tax is not regarded as interest in the sense that it is a consideration for the forbearance of money, but is deemed to be a penalty, or a means of compelling timely payment. On the other hand, it has been held that the statute relating to interest is not a penal or a criminal statute, and that interest is compensation for delay in payment.

*85 Corpus Juris Secundum,* ("CJS"), Taxation, § 1054 at 638 (footnotes omitted). The IRS cites *Matter of Stroud Wholesale, Inc.,* 37 B.R. 735, 739 (Bankr.E.D.N.C.1984) for the proposition that interest is defined as the compensation allowed by law for the use of money, which lends additional support to this position. As CJS points out, interest, as a means to compel timely payment, constitutes a penalty in the broad sense of the word. In light of the introductory remarks and the statutory language which gives sixth priority status to a penalty related to one of the priority taxes listed which compensates for actual pecuniary loss, interest would indeed appear to be a pecuniary loss penalty within the meaning of 507(a)(6)(G).

Accordingly, I find the decision in *In re Ayala,* 35 B.R. 651 (Bankr.D. Utah 1983) in which the court ruled that interest does not constitute a penalty inapplicable to the instant case. The *Ayala* court stated:

> An obligation, to be allowed priority under Section 507(a)(6)(G) must meet three requirements: first, it must be a penalty; second, it must be related to a claim of a kind entitled to priority under Section 507(a)(6)(G); and third, it must be in compensation for actual pecuniary loss Because ... the 'interest' claimed.... [is not considered a penalty, it] do[es] not qualify for priority under Section 507(a)(6)(G).

*In re Ayala, supra* at 655.

A rigid application of the term "penalty" appears unreasonable in light of the legislative history and the inclusion by both houses of Congress of a provision granting priority status to all fines which were compensatory in nature.

Section 507(a)(6)(A)(G) contains language which at first blush seems contradictory. A reasonable inquiry might well be made on how a penalty, which is traditionally regarded as punitive, can be imposed for compensation for pecuniary loss. In the instant case, two assessments beyond the tax were levied against the debtor. One assessment, interest, was assessed as compensation to the IRS for use of the money by the debtor subsequent to the filing deadline, while the other assessment, a penalty, was assessed to punish the debtor for failing to file by the filing deadline. (The IRS has stipulated that the debtor's liability for prepetition penalties, other than interest, constitutes a general unsecured claim not accorded priority status.) These two claims by the IRS were made in addition to the claim for tax. Both additional claims were made solely on the basis of the Debtor's late filing. I find that prepetition interest on Debtor's income tax liabilities should be given priority status. In so holding, this Court concurs with the decisions in *In re Frost,* 19 B.R. 804, 809 (Bankr.D. Kan.1982); *In re Hernando Appliances, Inc.,* 41 B.R. 24, 25 (Bankr.N.D.Miss.1983); *Accord, In re South Shore Vending, Inc.,* 25 B.R. 111 (Bankr.D.Mass.1982); *In re Coleman American Moving Services, Inc.,* 20 B.R. 267, 269 (Bankr.D.Kan.1981); *In re Coleman American Moving Services, Inc.,* 26 B.R. 825, 831 (Bankr.D.Kan.1983).

Judgment will be entered in accordance with the foregoing opinion.