In the Matter of HIRSCH–FRANKLIN, ENTERPRISES, INC., Debtor.

William M. FLATAU, Trustee, Plaintiff,

v.

F. Ray JACKSON, Tax Commissioner for Bibb County and City of Macon and State of Georgia, Department of Revenue, Defendants.

No. 82–50080.
Adv. P. No. 85–5008.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

July 31, 1986.

William M. Flatau, of Brown, Katz, Flatau & Hasty, Macon, Ga., the trustee.

Emmett L. Goodman, Jr., Macon, Ga., for R. Ray Jackson, Tax Com'r.

## MEMORANDUM OPINION ON DISTRIBUTION OF PROPERTY OF THE ESTATE

ROBERT F. HERSHNER, JR., Bankruptcy Judge.

### STATEMENT OF THE CASE AND FINDINGS OF FACT

Hirsch-Franklin Enterprises, Inc. (Debtor), filed a petition under Chapter 7 of the Bankruptcy Code on January 26, 1982. On January 29, 1982, Debtor's case was converted to Chapter 11, and this Court confirmed Debtor's plan of reorganization on July 26, 1983. On July 24, 1984, Debtor's case was converted back to Chapter 7, and William M. Flatau was appointed as the trustee. Mr. Flatau, as trustee (Plaintiff), filed an adversary proceeding on January 25, 1985, against F. Ray Jackson, Tax Commissioner for Bibb County and the City of Macon (Defendant), and the State of Georgia, Department of Revenue.[1] In this adversary proceeding, Plaintiff requests the Court to declare the relative rights of certain claim holders to proceeds which he holds from the sale of certain real estate of Debtor.

The parties filed a "Stipulation of Facts" on August 16, 1985. On June 6, 1984, during the time Debtor's case was pending under Chapter 11, Defendant filed a proof of claim for $10,053.48. This claim includes the following taxes, penalties, interest, and costs assessed against Debtor from 1980 to 1984:

---

1. The State of Georgia, Department of Revenue, failed to file an answer within 30 days of Plaintiff's complaint. R.Bankr.P. 7012(a). The State of Georgia, Department of Revenue, therefore, is in default. R.Bankr.P. 7055.

## REAL PROPERTY

| YEAR | TAX | PENALTY | INTEREST * | COSTS |
|---|---|---|---|---|
| PREPETITION | | | | |
| 1980 | $ 532.97 | 0 | $268.50 | $17.00 |
| 1981 | 546.16 | $ 55.02 | 223.93 | 17.00 |
| 1982 | 38.97 | 7.85 | 10.80 | 1.21 |
| Total | $1118.10 | $ 62.87 | $503.23 | $35.21 |
| CHAPTER 11 CONVERSION TO CONFIRMATION | | | | |
| 1982 | $ 508.13 | $102.40 | $140.80 | $15.79 |
| 1983 | 266.69 | 26.85 | 41.62 | 8.24 |
| Total | $ 774.82 | $129.25 | $182.42 | $24.03 |
| CONFIRMATION TO CHAPTER 7 CONVERSION | | | | |
| 1983 | $ 283.26 | $ 28.52 | $ 44.20 | $ 8.76 |
| 1984 | 328.33 | 0 | 9.31 | 10.70 |
| Total | $ 611.59 | $ 28.52 | $ 53.51 | $19.46 |
| POSTCONVERSION TO 12/31/84 | | | | |
| 1984 | $ 255.01 | 0 | $ 7.22 | $ 8.30 |
| Total | $ 255.01 | 0 | $ 7.22 | $ 8.30 |

* Interest calculated through 1/31/85, except personal property taxes for 1980–82 calculated through 1/31/84. Additional interest at 12% per annum.

## PERSONAL PROPERTY

| YEAR | TAX | PENALTY | INTEREST * | COSTS |
|---|---|---|---|---|
| PREPETITION | | | | |
| 1980 | $1035.55 | $104.60 | $424.68 | $ 8.50 |
| 1981 | 1410.59 | 284.20 | 429.85 | 17.00 |
| 1982 | 100.66 | 30.43 | 15.71 | 1.21 |
| Total | $2546.80 | $419.23 | $870.24 | $26.71 |
| CHAPTER 11 CONVERSION TO CONFIRMATION | | | | |
| 1982 | $1312.44 | $396.67 | $204.96 | $15.79 |
| 1983 | 750.97 | 151.30 | 117.25 | 8.24 |
| Total | $2063.41 | $547.97 | $322.21 | $24.03 |
| CONFIRMATION TO CHAPTER 7 CONVERSION | | | | |
| 1983 | $ 797.63 | $160.70 | $124.54 | $ 8.76 |
| 1984 | 1016.94 | 102.35 | 28.83 | 10.70 |
| Total | $1814.57 | $263.05 | $153.37 | $19.46 |
| POSTCONVERSION TO 12/31/84 | | | | |
| 1984 | $ 789.85 | $ 79.49 | $ 22.39 | $ 8.30 |
| Total | $ 789.85 | $ 79.49 | $ 22.39 | $ 8.30 |

* Interest calculated through 1/31/85, except personal property taxes for 1980–82 calculated through 1/31/84. Additional interest at 12% per annum.

On May 7, 1985, this Court awarded the law firm of Sell & Melton attorney's fees in the amount of $18,800 for services rendered in connection with its representation

of Debtor while the case was under Chapter 11. The attorney's fees constitute administrative expenses incurred during the pendency of Debtor's Chapter 11 case.

Debtor's real estate located at 476 Second Street, Macon, Georgia, was sold by Plaintiff. Plaintiff presently holds in a bank account $15,852.95 of the proceeds from the sale of this real estate. V.J. Adams, Jr., the attorney for the real estate's purchaser, holds in trust $4,676.11, which represents escrowed sales proceeds to insure that any taxes owed to Defendant on the real estate are paid in full. None of the proceeds held by Plaintiff or Mr. Adams constitute proceeds from the sale of Debtor's personal property. The total anticipated receipts in Debtor's Chapter 7 case will total $20,529.06.

## CONCLUSIONS OF LAW

■ In determining the priority of liens, Defendant first asserts that Georgia law, not the Bankruptcy Code, is applicable because state law traditionally governs the priority of liens, giving absolute priority to tax liens. For the reasons recently set forth by this Court in *Flatau v. Jackson (In re The Cropper Co.)*,[2] the Court holds that the Bankruptcy Code governs in determining the priority of liens in Debtor's bankruptcy case.

■ Having determined that the Bankruptcy Code's priority scheme is applicable, the Court next addresses Defendant's argument that a subordination of city, county, and state tax liens under the Bankruptcy Code violates the tenth amendment to the United States Constitution[3] because it interferes with a state's ability to fulfill its governmental responsibilities. The court in *Forell v. Kent County Treasurer &*

*City of Grand Rapids Treasurer (In re Kamstra )*,[4] recently addressed the same argument in considering section 724(b) of the Bankruptcy Code.[5] The court held that section 724(b) does not violate the tenth amendment. 51 B.R. at 832, 13 Bankr.Ct. Dec. at 405, 13 Collier Bankr.Cas.2d at 274. In arriving at its holding, the court in *In re Kamstra* noted the Supreme Court's recent decision of *Garcia v. San Antonio Metropolitan Transit Authority.*[6] In *Garcia*, the Supreme Court upheld Congress' action in granting the employees of the San Antonio Metropolitan Transit Authority the protections of the wage and hour provisions of the Fair Labor Standards Act under the Commerce Clause. 105 S.Ct. at 1020–21. The Supreme Court reached this conclusion after weighing the restraint Congress' action placed on the rights of state sovereignty under the tenth amendment. 105 S.Ct. at 1016–20.

In reviewing *Garcia*, the court in *In re Kamstra* noted that:

According to *Garcia* a court may place a substantive restraint on an exercise of the Congress's delegated powers that impinges upon the sovereignty of the states, but only if such a restraint is justified by the procedural nature of the federal structure of the Constitution, and only if such a restraint is tailored to compensate for possible failings in the national political process. This Court understands that to mean it could impose a substantive restraint, such as holding subordination under § 724(b) unconstitutional when it precludes payment of local taxes, only if it were satisfied that the interests of local and state government in their tax revenues inherently could not have been represented in Congress or

2. 63 B.R. 874, 876 (Bankr.M.D.Ga.1986).

3. U.S. Const. amend. X.

4. 51 B.R. 826, 13 Bankr.Ct.Dec. 401, 13 Collier Bankr.Cas.2d 266 (Bankr.W.D.Mich.1985).

5. 11 U.S.C.A. § 724(b) (West 1979).

6. 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). In *Garcia*, the Supreme Court overruled its prior decision of *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), and thereby rejected its previous "rule of state immunity from federal regulation that turns on a judicial appraisal of whether a particular governmental function is 'integral' or 'traditional.'" 105 S.Ct. at 1016.

"the national political process" and that such a holding compensated for that failure of the process to consider the need of local and state government for tax revenues.

51 B.R. at 832, 13 Bankr.Ct.Dec. at 404–05, 13 Collier Bankr.Cas.2d at 273–74.

After applying this standard, the court in *In re Kamstra* found that Congress drew no distinction between local, state, or federal tax liens, allowing all of them to be subordinated under the Bankruptcy Code. The court was persuaded that to the extent that the interest of the federal government in revenue is identical with that of the state and local governments, the state's interests were represented in Congress and not discriminated against or ignored. The court, therefore, held that section 724(b) does not violate the tenth amendment based upon the standards set forth in *Garcia.* 51 B.R. at 832, 13 Bankr.Ct.Dec. at 405, 13 Collier Bankr.Cas.2d at 274.

This Court agrees with the reasoning set forth by the court in *In re Kamstra* and holds that section 726 does not violate the tenth amendment to the United States Constitution. *Cf. Richardson v. First Federal Savings & Loan Association (In re Stroud Wholesale, Inc.),* 37 B.R. 735 (Bankr.E.D. N.C.1984), *rev'd sub nom. on other grounds, Richardson v. Pitt County (In re Stroud Wholesale, Inc.),* 47 B.R. 999 (E.D. N.C.1985).[7] Congress drew no distinction between local, state, or federal taxing authorities in specifying the distribution of the assets in a bankruptcy estate. Fur-

thermore, to the extent that the federal government holds a tax lien on property, it has the same interest with that of a local or state government that holds a tax lien on the same property, and as such, the Court finds that the state's interests were represented in Congress at the time the Bankruptcy Code was enacted. The Court, therefore, concludes that section 726 of the Bankruptcy Code is constitutional

The Court now turns to the issue of what priority Defendant's claim, consisting of taxes, penalties, interest, and costs, is entitled to under the Bankruptcy Code.[8] In determining the priority of Defendant's claim, the Court will divide the claim into four time periods. The first time period is from July 24, 1984, through the present, the time during which the case has been pending under Chapter 7.[9] The second time period is from January 29, 1982, through July 25, 1983, the time during which the case was pending under Chapter 11 until confirmation. The third time period is from July 26, 1983, through July 23, 1984, the time period during which Debtor's Chapter 11 plan was confirmed until the case's conversion to Chapter 7. The last time period is before January 26, 1982, the time period prior to the filing of the bankruptcy case.

**A. Claims Arising During Chapter 7**

■ Section 726(b) provides that "administrative expenses incurred under this chapter after such conversion have priority over

---

**7.** The court in *In re Stroud Wholesale, Inc.* noted:

> If Congress has the authority to enact uniform laws on the subject of bankruptcies, it must be empowered to determine how the funds of the estate will be distributed. Otherwise, the authority is meaningless, for the states will consistently enact legislation to provide for payment of its claims ahead of all other obligations of the debtor, including the cost of administering the estate itself.

37 B.R. at 739.

**8.** The proceeds that Plaintiff holds for distribution are proceeds derived only from the sale of Debtor's real property. Any claim that Defendant has for taxes, penalties, interest, and costs assessed against Debtor's personal property can-

not be asserted against these proceeds, and these claims became unsecured against Debtor's bankruptcy estate when Plaintiff abandoned the personal property. If Defendant has a valid claim against the personal property, then that claim is secured by the personal property itself. *See In re Skinner Lumber Co.,* 35 B.R. 31 (Bankr.S.C.1983).

**9.** The Court notes that Debtor's case was also pending under Chapter 7 from January 26, 1982, through January 28, 1982. The parties did not include this as part of the Chapter 7 time period when Defendant's claim was broken down into time periods, so the Court will not treat this time period separately because it is de minimis.

administrative expenses incurred under any other chapter of this title or under this chapter before such conversion...." 11 U.S.C.A. § 726(b) (West 1979). Section 503(b) of the Bankruptcy Code [10] sets forth what type of claims constitute administrative expenses. Pursuant to this section, Plaintiff concedes that Defendant's tax claim in the sum of $255.01, arising from taxes assessed against Debtor's real property while the case was pending under Chapter 7, qualifies as an administrative expense under section 503(b)(1)(B)(i) [11] and is to be accorded first priority under section 726(b).[12] Section 503(b)(1)(C) provides that "any fine, penalty, or reduction in credit, relating to a tax of a kind specified in [section 503(b)(1)(B) ]" is also an allowed administrative expense.[13] The language of the statute expressly provides that penalties assessed against a debtor's property while a debtor's case is pending under Chapter 7 are an administrative expense accorded priority under section 726(b). *See United States v. Friendship College, Inc. (In re Friendship College, Inc.)*, 737 F.2d 430, 432–33 (4th Cir.1984); *In re Pharmadyne Laboratories, Inc.*, 53 B.R. 517, 522 (Bankr.N.J.1985); *In re Lumara Foods of America, Inc.*, 50 B.R. 809, 816, 13 Bankr. Ct.Dec. 409, 413 (Bankr.N.D.Ohio 1985); *Razorback Ready-Mix Concrete Co. v. United States (In re Razorback Ready-Mix Concrete Co.)*, 45 B.R. 917, 926, 12 Bankr.Ct.Dec. 356, 361, 12 Collier Bankr. Cas.2d 221, 233 (Bankr.E.D.Ark.1984); *In re St. Louis Freight Lines, Inc.*, 45 B.R. 546, 549, 12 Bankr.Ct.Dec. 647, 649, 11 Collier Bankr.Cas.2d 1317, 1321 (Bankr.E. D.Mich.1984); *In re Stack Steel & Supply Co.*, 28 B.R. 151, 156, 10 Bankr.Ct.Dec. 232, 235 (Bankr.W.D.Wash.1983). No penalties were assessed against Debtor's property during this period.

As Collier notes "[t]he Code does not expressly provide for interest on postpeti-

tion taxes to be treated as an administrative expense. The Senate version of the bill, which did so provide, was not adopted. Nevertheless, the courts have split over whether to treat interest on postpetition taxes as an administrative expense." 3 Collier on Bankruptcy ¶ 503.04[1][c] (15th ed. 1986) (footnotes and accompanying citations omitted). In *In re Lumara Foods of America, Inc.*,[14] the court noted the following:

> [T]he only reference to interest as an administrative expense is found in the Senate bill's version of section 503(b)(1)(B)(i).... The express provision was later deleted during the compromise debates on the final bill which eventually became law. That a deletion, instead of a revision, occurred is no legislative oversight. It represents a "deliberate and significant" indication of the drafters' intent following the debates.... Where there were two opposing views on postpetition interest, there evolved only one. Unmistakably, it was the House's exclusionary version of section 503(b)(1)(B)(i) which prevailed. The allowance of interest on post-petition taxes therefore would require the reinsertion of statutory language which was clearly left out beforehand. Such practice is more properly the role of the legislature than the court's.

50 B.R. at 817, 13 Bankr.Ct.Dec. at 414.

 Based upon the express statutory language of the statute as finally enacted by Congress, the Court concludes that interest on section 503(b)(1)(B) taxes is not an administrative expense under section 503(b)(1)(C) and therefore does not qualify for priority treatment under section 726(b). *See In re Lumara Foods of America, Inc.*, 50 B.R. at 817, 13 Bankr.Ct.Dec. at 414; *In re Stack Steel & Supply Co.*, 28 B.R. at 156, 10 Bankr.Ct.Dec. at 235. *But see In*

---

10. 11 U.S.C.A. § 503(b) (West 1979).

11. 11 U.S.C.A. § 503(b)(1)(B)(i) (West 1979).

12. No ad valorem taxes, however, are owed by the estate for 1985 because the purchaser of the real estate assumed the 1985 tax liability.

13. 11 U.S.C.A. § 503(b)(1)(C) (West 1979).

14. 50 B.R. 809, 13 Bankr.Ct.Dec. 409 (Bankr.N. D.Ohio 1985).

*re Friendship College, Inc.,* 737 F.2d at 433 (while interest is not expressly mentioned in section 503(b)(1)(C), court decided to treat interest consistently with taxes and penalties); *In re Razorback Ready-Mix Concrete Co.,* 45 B.R. at 926, 12 Bankr.Ct. Dec. at 361, 12 Collier Bankr.Cas.2d at 233 (court finding that section 503(b)(1)(C) expressly provides for the allowance of interest). The Court finds that there is no clear expression of legislative intent to include costs as administrative expenses, nor does the statutory language provide for costs. The Court, therefore, concludes that costs assessed along with the Chapter 7 taxes are also not an administrative expense under section 503(b)(1)(C). The Court finds that that portion of Defendant's claim for interest in the sum of $7.22 and costs in the sum of $8.30 assessed while Debtor's case was pending under Chapter 7 are nonpriority general unsecured claims.

B. *Chapter 11 Preconfirmation Claims*

▇▇▇ After all of the Chapter 7 administrative expenses are satisfied, distribution is made to claims in accordance with section 726(a) of the Bankruptcy Code.[15] Section 726(a)(1) provides for distribution to claims in the order specified in section 507. Section 507(a)(1) confers first priority status to administrative expenses allowable under section 503(b). *See* 11 U.S.C.A. § 507(a)(1) (West 1979). The parties stipulate that attorney's fees awarded to the law firm of Sell & Melton for services rendered to Debtor while its case was pending under Chapter 11 qualify as an administrative expense entitled to priority under section 507(a)(1).[16] The parties also stipulate that Defendant's tax claim for $774.82, arising from taxes assessed during this period, was an actual and necessary expense incurred by Debtor's estate and is an administrative expense allowed under section 503(b), and thus entitled to priority under section 507(a)(1). *See Waldschmidt v. Commissioner (In re Lambdin),* 33 B.R. 11, 12–13, 11 Bankr.Ct.Dec. 103, 103–04, 9 Collier Bankr.Cas.2d 673, 674–75 (Bankr.M.D.Tenn.1983); *In re Blue Ribbon Delivery Service, Inc.,* 31 B.R. 292, 293, 10 Bankr.Ct.Dec. 1102, 1102–03, 8 Collier Bankr.Cas.2d 1111, 1112 (Bankr.W.D.Ky. 1983). For the reasons previously set forth by the Court, the Court finds that penalties on these taxes in the sum of $129.25 constitute an allowed administrative expense under section 503(b)(1)(C)[17] and thus are entitled to priority under section 507(a)(1). The Court further finds that interest in the sum of $182.42 and costs in the sum of $24.03 on the taxes do not constitute administrative expenses under section 503(b) and are not entitled to priority.[18] The interest and costs constitute nonpriority general unsecured claims.

C. *Postconfirmation Claims*

▇▇▇ Plaintiff asserts that Defendant's claim for taxes assessed after Debtor's Chapter 11 confirmation but prior to Debtor's conversion to Chapter 7 is not entitled to priority treatment under section 507(a)(1), but is entitled to treatment under section 507(a)(6).[19] In *In re Westholt Manufacturing, Inc.,*[20] the court addressed the issue of what priority tax claims are entitled to under section 507(a) after a Chapter

---

**15.** 11 U.S.C.A. § 726(a) (West 1979).

**16.** The law firm of Sell & Melton was awarded $18,800 as attorney's fees.

**17.** *See supra* note 13 and accompanying text, at 869–70.

**18.** *See supra,* at 870–71.

**19.** With the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 358 (1984), Congress amended section 507 of the Bankruptcy Code. Under this amendment, section 507(a)(6) was redesignated as section 507(a)(7). The Court notes that no substantive changes occurred to section 507(a)(6) under this amendment. The amendment applies only to cases filed 90 days after July 10, 1984. This case was filed on January 26, 1982, so the Court's opinion will refer to the present section 507(a)(7) as section 507(a)(6).

**20.** 20 B.R. 368, 9 Bankr.Ct.Dec. 181, 6 Collier Bankr.Cas.2d 1068 (Bankr.Kan.1982), *aff'd sub nom. United States v. Redmond,* 36 B.R. 932, 10 Collier Bankr.Cas.2d 1428 (D.Kan.1984).

11 plan has been confirmed and prior to its consummation. The court noted that upon confirmation of a debtor's Chapter 11 plan, the property of the bankruptcy estate vests in the debtor thereby terminating the estate's existence. *See* 11 U.S.C.A. § 1141(b) (West 1979). As a consequence, the court concluded that taxes incurred by a debtor subsequent to confirmation of a Chapter 11 plan are not taxes "incurred by the estate" as required under section 503(b) and thus are not entitled to be treated as administrative expenses. The court concluded that such taxes incurred by the debtor in possession are to be treated as prepetition tax claims in a subsequent conversion of the case and, as such, are entitled to priority under section 507(a)(6). 20 B.R. at 372, 9 Bankr.Ct.Dec. at 183, 6 Collier Bankr. Cas.2d at 1072, *aff'd sub nom. United States v. Redmond,* 36 B.R. at 934, 10 Collier Bankr.Cas.2d at 1430. This Court agrees with the reasoning of the court in *In re Westholt Manufacturing, Inc.,* and holds that Defendant's claim for taxes in the sum of $611.59, incurred after Debtor's Chapter 11 confirmation and prior to its Chapter 7 conversion, is entitled to priority under section 507(a)(6).

The Court now must determine to what priority Defendant's claim for penalties, interest, and costs is entitled. Section 507(a)(6)(G) confers priority status to a penalty related to a tax claim under section 507(a)(6) if the penalty is in compensation for actual pecuniary loss. 11 U.S.C.A. § 507(a)(6)(G) (West 1979). As noted by Senator Dennis DeConcini in the Congressional Record:

> For purposes of the above priority rules, the House amendment adopts the provision of the Senate bill that any tax liability which, under otherwise applicable tax law, is collectible in the form of a "penalty," is to be treated in the same

manner as a tax liability. In bankruptcy terminology, such tax liabilities are referred to as pecuniary loss penalties. Thus, any tax liability which under ... State or local tax law is payable as a "penalty," ... will be entitled to the priority which the liability would receive if it were expressly labeled as a "tax" under the applicable tax law. *However, a tax penalty which is punitive in nature is given subordinated treatment under section 726(a)(4).*

1978 U.S. Code & Cong. Admin. News 5787, 6505, 6567–68 (emphasis added). *See also In re Palmer,* 53 B.R. 545, 548 (Bankr. N.D.Tex.1985); *In re Ayala,* 35 B.R. 651, 655, 11 Bankr.Ct.Dec. 371, 373 (Bankr.Utah 1983); 3 Collier on Bankruptcy ¶ 507.-04[7][h] (15th ed. 1986).[21]

The Court notes that there has been a split among the courts on the issue of whether interest on a tax claim under section 507(a)(6) is to be accorded priority along with the section 507(a)(6) tax claim. Some courts allow claims for interest to be accorded the same priority as the underlying tax when the interest appears to be assessed against the debtor's property solely for compensatory purposes. *See In re Keller & Katkowsky,* 55 B.R. 155, 157 (Bankr.E.D.Mich.1985); *In re Palmer,* 53 B.R. at 546–49; *In re Treister,* 52 B.R. 735, 737, 13 Collier Bankr.Cas.2d 534, 535–36 (Bankr.S.D.N.Y.1985); *In re Hernando Appliances, Inc.,* 41 B.R. 24, 25 (Bankr.N. D.Miss.1983). Those courts granting interest the same priority as the underlying tax justify doing so by pointing to the legislative history of the statute and noting that the Senate Committee's original version of the bill contained a provision in section 726 which expressly provided that the term "claim" included interest. They also note that the House deleted this provision be-

---

**21.** As Collier notes:

> Certain tax liabilities may, under otherwise applicable tax law, be collectible in the form of a penalty. The Code thus provides that such "penalties" are to be treated in the same manner as a tax liability. In bankruptcy terminology, such tax liabilities are to be referred to as pecuniary loss penalties. *How-*

> *ever, if such fines or penalties are punitive in nature and not for actual pecuniary loss, they are not given priority but rather are subordinated in order of payment under section 726(a)(4).*

3 Collier on Bankruptcy ¶ 507.04[7][h] (15th ed. 1986) (emphasis added) (footnotes and accompanying citations omitted).

cause the provision was unnecessary in that the right to payment of interest due is a right to payment which is already included in the definition of claim in section 101(4) of the Bankruptcy Code.[22] *In re Treister*, 52 B.R. at 737, 13 Collier Bankr. Cas.2d at 536. These courts, therefore, conclude that Congress intended for interest to be included with a claim under section 507(a)(6).

Those courts refusing to accord interest the same priority as the underlying tax claim under section 507(a)(6) justify their position by stating that the statutory language does not expressly provide for "interest" to be accorded such priority. These courts state that while interest is a part of a tax claim, the interest portion of a claim is given a different classification for purposes of distribution and priority status because the statutory language in section 507(a)(6)(G) does not expressly include interest. *See In re Razorback Ready-Mix Concrete Co.*, 45 B.R. at 924, 12 Bankr.Ct. Dec. at 360, 12 Collier Bankr.Cas.2d at 231; *In re Ayala*, 35 B.R. at 655, 11 Bankr.Ct. Dec. at 373.

This Court is persuaded that the express language of the statute itself resolves the issue. To determine whether interest is entitled to priority under section 507(a)(6)(G), the statutory language expressly requires first, the claim to be a "penalty," secondly, the claim to be compensation for pecuniary loss, not a punitive penalty, and thirdly, the claim to be related to a tax allowed under section 507(a)(6). *See In re Ayala*, 35 B.R. at 655, 11 Bankr. Ct.Dec. at 373. If a tax penalty is punitive in nature, the Bankruptcy Code provides

that it be given subordinated treatment under section 726(a)(4).[23] 11 U.S.C.A. § 726(a)(4) (West 1979).

The Court finds that the interest assessed during this period is a type of "penalty" and is related to a claim of a kind set forth in section 507(a)(6). The determinative question is whether the interest is a pecuniary loss penalty or a punitive penalty. As the court in *In re New England Carpet Co.*[24] noted, in situations in which penalties *and* interest are assessed by a taxing entity, it is questionable that a compensatory role can be assigned to both the penalties and interest. 26 B.R. at 936, 10 Bankr.Ct.Dec. at 229, 8 Collier Bankr. Cas.2d at 333. The pecuniary loss to the taxing entity is the loss of the use of the tax money which is precisely the kind of loss that interest is supposed to compensate. 26 B.R. at 936–37, 10 Bankr.Ct.Dec. at 229, 8 Collier Bankr.Cas.2d at 333. *See also In re Keller & Katkowsky*, 55 B.R. at 157.[25] Based upon this reasoning, the court in *In re New England Carpet Co.* concluded that interest assessments satisfied all of the requirements of section 507(a)(6)(G), including the compensatory requirement, and that the claim for interest should be accorded priority status under that section. The court further concluded that the penalty assessments did not satisfy all of the requirements of section 507(a)(6)(G) because the taxing entity failed to show that the penalty was not punitive, and therefore the claim for penalties was not accorded priority under section 507(a)(6)(G). 26 B.R. at 936–37, 10 Bankr. Ct.Dec. at 229, 8 Collier Bankr.Cas.2d at

22. 11 U.S.C.A. § 101(4) (West 1979).

23. Section 726(a)(4) provides:

 (a) Except as provided in section 510 of this title, property of the estate shall be distributed—

 . . . .

 (4) fourth, in payment of *any allowed claim*, whether secured or unsecured, for any fine, *penalty*, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, *to the extent that such* fine, *penalty*, forfeiture, or damages *are*

*not compensation for actual pecuniary loss* suffered by the holder of such claim. . . .
11 U.S.C.A. § 726(a)(4) (West 1979) (emphasis added).

24. 26 B.R. 934, 10 Bankr.Ct.Dec. 227, 8 Collier Bankr.Cas.2d 329 (Bankr.Vt.1983).

25. In that decision, the court stated that "[i]nterest is intended to 'compensate the government for the delay in payment of the tax,' . . ." 55 B.R. at 157. The court concluded, therefore, that interest is entitled to treatment as a priority claim under section 507(a)(7). *Id.*

333. *See also In re Hernando Appliances, Inc.*, 41 B.R. at 25.

 Accordingly, the Court concludes that the claim for interest in the sum of $53.51 is entitled to priority along with the underlying section 507(a)(6) taxes because the interest is a pecuniary loss penalty related to a tax claim under section 507(a)(6). *See In re Keller & Katkowsky,* 55 B.R. at 157; *In re Palmer,* 53 B.R. at 549. *Accord In re Treister,* 52 B.R. at 737, 13 Collier Bankr.Cas.2d at 535–36; *In re Hernando Appliances, Inc.,* 41 B.R. at 25. The Court also concludes that the claim for costs in the sum of $19.46 is a pecuniary loss penalty and is related to the section 507(a)(6) tax claim and entitled to priority under section 507(a)(6)(G). The claim for penalties in the sum of $28.52, however, is not entitled to such status because the Court is not persuaded that the penalty was assessed for strictly compensatory purposes.[26] *See In re New England Carpet Co.*, 26 B.R. at 937, 10 Bankr.Ct.Dec. at 229, 8 Collier Bankr.Cas.2d at 333; *In re Hernando Appliances, Inc.,* 41 B.R. at 25. The Court, therefore, determines that the penalty must be treated under section 726(a)(4). *See In re Ayala,* 35 B.R. at 656, 11 Bankr.Ct.Dec at 374.

### D. *Prepetition Claims*

 Section 507(a)(6)(B) gives priority to taxes assessed against a debtor's property before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition. 11 U.S.C.A. § 507(a)(6)(B) (West 1979). Pursuant to section 507(a)(6)(B), the Court finds that Defendant's claim for prepetition taxes in the sum of $1118.10 is entitled to priority under section 507(a)(6)(B). For the reasons previously stated, the Court finds that the claim for interest in the sum of $503.23 and the claim for costs in the sum of $35.21 assessed along with the underlying section 507(a)(6)(B) tax claim are entitled to priority under section 507(a)(6)(G). The claim for

penalties in the sum of $62.87 is treated under section 726(a)(4).

---

**26.** *See supra* note 21, at 871–872.